## UNITED STATES *v.* CAMBRIDGE LOAN AND BUILDING COMPANY.

No. 46. Argued October 23, 24, 1928.—Decided November 19, 1928.

*Mr. T. H. Lewis, Jr.,* Attorney, Bureau of Internal Revenue with whom *Solicitor General Mitchell* and *Assistant Attorney General Galloway* were on the brief, for the United States.

*Mr. L. L. Hamby* for respondent.

*Messrs. Cleaveland R. Cross* and *Herbert W. Nauts* filed a brief as *amici curiae* by special leave of Court.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit brought by the respondent to recover the amount of taxes for the years 1918 through 1923, paid under duress, from which it says that it was exempt by the Acts under which the taxes were levied. It recovered

in the Court of Claims and a writ of certiorari was granted by this Court, April 9, 1928.

The respondent is incorporated under the laws of Ohio, by which it is recognized as a building and loan association, and it has conducted its business in accordance with the laws of that State. The Revenue Act of 1918, February 24, 1919, c. 18, § 231, 40 Stat. 1057, 1076, exempts from the taxes in question " (4) Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit." The Act of November 23, 1921, c. 136, § 231, 42 Stat. 227, 253, exempts " (4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; and cooperative banks without capital stock organized and operated for mutual purposes and without profit." These are the statutes concerned. No definition is given of building and loan associations, and the question is what scope is to be given to the words.

The rudimentary form of such associations is supposed to be a society raising by subscription of its members a fund for making advances to members in order to enable them to build or buy houses of their own. A member is entitled to borrow on sufficient security an amount equal to his subscription for shares and when the shares are paid up by the instalment payments required and the profits of the company his indebtedness is cancelled. The Government argues that the essence of these societies, what gives them their quasi public character and the only thing that warrants exempting them from taxes, is that their single purpose is to enable people to get homes of their own. When one of them yields to the temptation to enlarge its operations and to make a little money outside, the Government says, it loses its title to its distinctive name and to the exemption that the statute gives. The respondent received a large proportion of

deposits from persons who were not members and it paid interest upon the same, and it also made considerable loans to such persons until the passage of the Act of 1921. Even when the borrower was a stockholder he was required only to subscribe for from one to five shares regardless of the amount of the loan. It is argued that thus the society became a mere money-making institution like an ordinary bank.

But for such an association to start it must have some money to lend, and the typical member does not have it. Long before Congress dealt with loan and building associations, an esteemed writer upon the subject had insisted on the reasonableness of allowing them to issue full paid stock with fixed dividends, both in his book and upon the bench. Endlich, Building Associations, 2d. ed. (1895), § 462. *Folk* v. *Capital Savings & Loan Ass'n,* 214 Penn. 529, 534, 544 (1906). The same author recognized depositors, § 56, and with more or less qualification the right to lend to outsiders, §§ 314, *et seq.,* and to borrow §§ 297, *et seq.* Under the Ohio statute the respondent has these powers, and still, as we have said, is called a building and loan association by that State. The same name was commonly used in other States and similar powers were given with more or less restriction. When Congress exempted such associations from the income tax of course it was speaking of existing societies that commonly were known as such, not of ideals that would have been hard to find. And this is not left to inference alone. Some corporations having been taxed under the Act of August 5, 1909, c. 6, § 38; 36 Stat. 11, 12, which exempted 'domestic building and loan associations organized exclusively for the mutual benefit of their members,' the Act of February 26, 1917, c. 129; 39 Stat. 1491, 1493, directed the tax to be refunded as 'illegally collected' and included the respondent among the corporations named. This Act followed and by implication sanctioned decisions to similar

effect in *Herold* v. *Park View Building & Loan Ass'n,* 210 Fed. 577 (203 Fed. 876); *Central Building, Loan & Savings Co.* v. *Bowland,* 216 Fed. 526.

This interpretation was adhered to for the Act of 1909 and succeeding Acts, including that of 1918 now before us, until a few months before the Act of 1921. It was incorporated in Regulations of the Commissioner of Internal Revenue approved by the Secretary of the Treasury as late as January 28, 1921, and up to then no taxes had been levied or paid. In June of that year, however, the Regulations were modified so as to declare the societies taxable if the amounts borrowed from and lent to non-members were out of proportion to the borrowing needs of the members, and otherwise to limit the use of such societies as a mask to escape taxation. The present taxes are upheld by the Government on the ground that the respondent is such a mask. It is argued that even admitting all that has been said thus far, a State cannot make a bank exempt merely by calling it a building and loan association. No doubt extravagant cases might be imagined. But these associations are well known and a State is not likely to be party to a scheme to enable a private company to avoid federal taxation by giving it a false name. The statutes speak of ' domestic ' associations, that is, associations sanctioned by the several States. They must be taken to accept, with the qualifications expressly stated, what the States are content to recognize, unless there is a gross misuse of the name. The State of Ohio has recognized and still recognizes the respondent as belonging to the class which its name indicates. Very possibly the company has strained its privileges to near the limit, but we are not prepared to condemn the nomenclature adopted by the State. When the Act of 1921 was passed and added the words ' substantially all the business of which is confined to making loans to members,' the respondent conformed to the

statute, by requiring membership as a condition to a loan. The statute' did not limit loans to the amount of stock subscribed for. We may add that the net dividends are distributed to members at an equal rate to all.

We deem it plain that no taxes were warranted before the Act of 1921, and are of opinion that the taxes under that also were not justified, although as we have said the rights of the company were pressed somewhat far. In coming to this result we have not thought it necessary to go into details of disputed significance, thinking it enough to state the point of view from which we regard the case.

The assessment was not made until September 18, 1924, up to which time the respondent not unreasonably had supposed itself exempt, and then was taxed retrospectively for the five years before the one then current. In the meantime the respondent has distributed its money in dividends to its members and they presumably have paid income taxes on the dividends received. The statute of limitations had run or was running against them when the Government at the last moment filed a motion to remand that would have delayed the case and would have given the statute a further chance to run. The facts alleged in the motion sufficiently appear in the findings of the Court of Claims and so far as material have been assumed in the discussion of the case.

*Judgment affirmed.*