## LAWYERS' MORTGAGE CO. v. BOWERS, Collector of Internal Revenue.

District Court, S. D. New York. August 2, 1929.

Shearman & Sterling, of New York City, for plaintiff.

Charles H. Tuttle, U. S. Atty., and Samuel C. Coleman, both of New York City, for defendant.

FRANK J. COLEMAN, District Judge. The only question presented is whether

plaintiff was an "insurance company," within the meaning of the Revenue Act of 1921, § 1000 (42 Stat. 294). It voluntarily paid a capital stock tax for each of the fiscal years in question, and now seeks a refund on the ground that it was an "insurance company," and therefore expressly exempt under the statute in force at the time. Concededly it did some pure insurance business, and a large amount that was not insurance. The statute does not define an "insurance company," and the question is whether the nature of plaintiff's business and its status under the state laws put it in that class.

Plaintiff was incorporated in 1893, under the Insurance Law of New York, with the title Lawyers' Mortgage Insurance Company, which was later changed to Lawyers' Mortgage Company, without, apparently, any change in the nature of its business. It has ever since been subject to the insurance department of the state, complying with the latter's requirements in reference to reports, investments, etc. Most of the business which plaintiff has been doing would have been perfectly lawful if the company had been incorporated under the Banking Law of New York, and subject to that department, rather than the insurance department; but a small part, being pure insurance business, would have been unlawful.

The business principally consists of lending money on bonds and mortgages and then selling them (or participation in them), together with so-called policies of mortgage guaranty. The bonds and mortgages which plaintiff receives on its loans it sells at their face amount, either outright or through participation certificates. It thus makes no direct profit on the sales, but each purchaser is required to appoint the plaintiff his attorney in fact to collect the interest and principal, and to agree that plaintiff may retain a certain part of the interest collected in payment of the "premium" for the "policy" of mortgage guaranty.

There are only two sources of substantial profit to the plaintiff in the business above outlined: (1) In making the loans, plaintiff charges the borrower a lending fee; and (2) in selling the mortgages or participation certificates plaintiff receives a "premium" on its "policies" of guaranty. The lending fee covers the cost of an appraisal of the property in which the loan is made, but includes also a profit. Of course, plaintiff also receives interest on the bonds and mortgages before they are sold to investors, but they are sold as quickly as possible, except

for the amount of the guaranty fund required by the Insurance Law.

In the course of the transactions above outlined, which constitute the bulk of plaintiff's business, the only part that has any of the features of insurance is the guaranty given when the bonds and mortgages are sold, and defendant contends that even this is not insurance. The guaranty is embodied in a separate document, entitled "policy of mortgage guaranty," and in the community generally is known as a "policy." The consideration for it is expressed in the policy, and is known in the community as a "premium," being the portion of the interest on the bond and mortgage retained by the plaintiff. The guaranty is of payment of both principal and interest.

All of that business, including the guaranty, could be done by a corporation organized under the Banking Law of New York, and subject only to that department and not the insurance department. In fact, there are two corporations so organized doing substantially the same kind of business, though there are many more under the Insurance Law.

Defendant urges that the giving of the guaranty is not insurance, because plaintiff, as the owner of the bond and mortgage, merely adds the guaranty as an incident of the sale. It should be noted, however, that there is a specific consideration paid by the purchaser for the guaranty, and the latter is embodied in the form of a policy. The relations of the parties when the guaranty becomes effective are exactly the same as though plaintiff had never owned the bond and mortgage, and defendant concedes that in the latter case the giving of it would be an act of insurance. Plaintiff's ownership of the bonds and mortgages has an important bearing on the question whether it is an "insurance company," or merely an investment company that does some insurance; but I do not see how it prevents the guaranty from being insurance, if it would otherwise be so, as defendant concedes.

In addition to the above business, plaintiff does a small amount of what defendant concedes to be insurance, in that it guarantees mortgages which it has never owned, and embodies the guaranty in policies for which stipulated fees are paid. This portion of the business would be unlawful, if plaintiff were incorporated under any other than the Insurance Law.

Assuming that the issuance of all of plaintiff's policies is insurance business, the more difficult question remains whether it is an "insurance company," or merely a com-

pany that does some insurance. The proportion which its insurance business bore to the rest may be seen from the gross income for two years as follows:

| Year. | Lending Fees (Including Extension Fees). | Premiums. | Interest. |
|---|---|---|---|
| 1922 | 869,587.36 | 619,986.38 | 372,795.12 |
| 1923 | 1,006,460.08 | 750,805.21 | 426,841.31 |

It thus appears that a very substantial part of plaintiff's business is insurance, and a small part of it could not be done if the plaintiff were not organized under the Insurance Law. I do not think it can be said that either the insurance business or the noninsurance business is incidental to the other. Both are sources of substantial income, and are direct objectives, co-ordinate in plaintiff's plan.

In the past both the plaintiff and the government have taken positions inconsistent with their present contentions; but I do not think that throws much light on the question to be decided. Furthermore, I do not see much significance in the fact that plaintiff advertised the noninsurance part of its business in a way that gave no indication that it was an insurance company.

In this situation of doubt, where from the nature of its business it might be classed either as an insurance company or otherwise, I think its status under the New York laws is determinative. Certainly the state authorities recognize it as an insurance company. It was so incorporated, and has always been so treated by the insurance department. In a somewhat similar case, United States v. Cambridge Loan & Building Co., 278 U. S. 55, 49 S. Ct. 39, 73 L. Ed. 180, the Supreme Court held that the state law was controlling.

To disregard its status under the laws of New York, and to consider only the nature of the business done, would give rise to great uncertainty and variation in its classification. A corporation could not be disqualified from being classed as an insurance company merely because it did some other business, whether incidental or independent. But what proportion between the two kinds of business would be fixed as determinative? Furthermore, a company might, with only slight fluctuations in the various departments of its business, vary from year to year in its classification. The whole scheme of the federal taxation is inconsistent with that situation.

I therefore direct judgment for the plaintiff. The findings will, of course, be the same as the stipulation of facts.