*1164 OPINION.
SteRNhagen:
This petitioner, in March, 1921, filed a corporation income and profits-tax return for 1920, showing gross income $180,-853.78, which was the difference of gross sales $701,091.45 less cost of goods sold $520,237.69; deductions $175,458.65, including expenses, interest, taxes and depreciation; leaving a net income of $5,395.11, upon which an income tax was computed at $339.51. The invested capital was stated to be $2,846.85, which coincided with the amount shown as surplus. A cash dividend -was shown as paid October 15, of $632. Its return for 1921 was filed in March, 1922, showing gross income $182,826.55, deductions $176,665.69, net income $5,960.86, invested capital $25,900, and. total tax $696.63. Auditing these returns, the Commissioner found that certain capital expenditures had been improperly deducted as expense, increased sales, adjusted inventory and allowed additional depreciation, all of -which, carried into a recomputation of tax, resulted in the determination of these deficiencies.
*1165 The petitioner makes no contention as to the amount of the deficiencies, if it is to be held subject to tax. It now claims, however, that it is entirely exempt from tax by virtue of section 231 (11), Eevenue Act of 1918, as to the year 1920, and section 231 (11), Eevenue Act of 1921, as to the year 1921. For present purposes, both sections are identical, and the material language is as follows:
Farmers’, trait growers’, or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them.
The petitioner argues retroactively by undertaking first to demonstrate that it was, in 1920 and 1921, within the description later carried in the Eevenue Act of 1926, and Eegulations 69; that this description expresses the intendment of the earlier statutes, and therefore that it is within the exemption of the acts in force during 1920 and 1921. This argument seems to carry with it the tacit admission that were the exemption of 1920 and 1921 to be applied strictly in accordance with the language of the acts then in force as above quoted, or the language of the regulations then in force, it would not comprehend this petitioner.
While there is some allurement in the reasoning that the latest statute represents the most mature thought and the highest public purpose and that we should promote this by sweeping away refinements of statutory language, it must not be forgotten that the exemption has been applied in its various stages to all taxpayers alike in accordance with the language of the statute and regulations in effect at the time. Congress in each statute expressed the public purpose and, except for ambiguities or obvious errors of drafting, the statute must be applied to all alike in accordance with its terms. Statutory construction is often directed by a consideration of later enactments to clear up doubt in the meaning of the earlier or to correct manifest error in its administration. But we do not understand our authority to extend to the point where we may apply later enactments to a period prior to their adoption by Congress by assuming that they supply earlier inadvertent omissions. United States v. Merriam, 263 U. S. 179. This is particularly true when, as in this case, it is an absolute exemption from tax we are called on to consider, and the administrative construction and application of the earlier statute during the years in question did not embody the later provisions. We must, therefore, consider whether, as shown by the evidence, the petitioner was within the description of the Eevenue Acts of 1918 and 1921.
It does not appear under what provision of the California statutes the petitioner was incorporated. We may assume, therefore, that *1166 it acted within its powers in issuing certificates, paying eight dollars a year to the holders, and calling it a dividend. There is no reason for the purpose of this tax to call this interest, as petitioner attempts to do. Farmers Cooperative Association, 5 B. T. A. 61; Trego County Cooperative Association, 6 B. T. A. 1275; Farmers’ Cooperative Milk Co., 9 B. T. A. 696. The membership fee was not a loan, but created an interest in the business and property and in such distributions of earnings as under the by-laws were proper. The limitation of the dividends to a small amount might, if standing alone, justify attributing to them but little significance in applying the statute, but would not warrant the Procrustean designation of them as interest.
And this we think is also true as to who may be called members. Not all producers who dealt with petitioner were members, and it would be a misnomer to call them such unless they brought themselves within the terms of the articles and the by-laws by paying the fee and thus acquiring the interest in and assuming the responsibility of the business and property. The members were 74, and upon this fact petitioner’s right to exemption must stand.
Thus, if we adhere to the facts and do not evade them by distorting terms to fit the statute, it appears that petitioner is not merely conducted for its members, but serves many more producers who are not members than it does members. Although the members received slightly more of the distributed proceeds in each year than did nonmembers, and this might indicate that the products marketed for members exceeded those of nonmembers, this is not necessarily so; and if it were, it would not meet the statute. The marketing done by petitioner for nonmembers was so substantial both in quantity (as indicated by distribution of proceeds) and in number of producers served that it can not be regarded as insignificant or incidental to the cooperative service for members.
From the evidence, it does not clearly appear whether petitioner’s operations were confined to that of “ sales agent for the purpose of marketing the products of members.” It appears rather from the testimony as to the nature of its gross receipts that much of its operations consist of manufacturing various products from milk and cream. But in view of our decision otherwise, we need not consider whether this alone would destroy the exemption.
Furthermore, it can not be said that the distribution of proceeds is such as to bring petitioner within the statutory exemption. The members paid in less than $8,000. Prior to the years in question the directors borrowed $48,000 to be used in the construction of plant. This was covered by notes. Both the interest and principal of these notes were being paid out of earnings before the producers were paid. The result was to build a substantial and valuable plant in which *1167 only the members had an interest and pro tanto to depart from the cooperative distribution contemplated by the statute. There is also some unexplained reference to payments on equipment, but we need not consider this. Nor need we consider whether the payment of $632 of dividends to members is important enough to destroy the exemption. It seems clear enough that petitioner does not turn back either to members or to producers generally “ the proceeds of sales, less the necessary selling expenses.”
It is also uncertain whether the amount distributed to producers (if we substitute the word for members) is computed “ on the basis of the quantity of produce furnished by them.” The monthly statements show an amount “ paid to patrons ” and show a distribution thereof proportioned to the grades of produce received. But it is not clear how the amount was arrived at or how its distribution was compute.cl. In 1921 over $37,000 was shown separately to have been paid to two persons for butter fat purchased. This is unexplained and we can not find its place in a cooperative plan.
Looking alone at the statutes covering the years in question, as well as the administrative regulations pursuant thereto in effect at the time, we are led to the opinion that petitioner was not exempt. The later statutes and regulations seem to be more liberal, but, even if we assume them to provide the exemption claimed (which we do not decide), we are not at liberty to apply them retroactively in this instance.
Petitioner cites United States v. Cambridge Loan & Building Co., 278 U. S. 55, to support a liberal application of the statute. There the Supreme Court found that the general characterization of a well known class of organizations was controlling over the description of its qualifications. Here we have no such characterization of a general class, but a specific enumeration of the attributes necessary to qualify for exemption. Unless the attributes are substantially present the statute is not met and the exemption must be denied.

Judgment toill be entered for the respondent.