RIVERDALE CO-OPERATIVE CREAMERY ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

No. 6242.

Circuit Court of Appeals, Ninth Circuit.

April 6, 1931.

712

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Helen Carloss, and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals determining deficiencies in income and profit taxes for the years 1920 and 1921, and denying a claim for exemptions under section 231 (11) of the Revenue Act of 1918 (40 Stat. 1076) and section 231 (11) of the Revenue Act of 1921 (42 Stat. 253), which provide, in identical language, that the following organizations shall be exempt from taxation:

"(11) Farmers', fruit growers', or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them."

The facts as found by the Board, so far as deemed material, are as follows: The petitioner was organized as a co-operative association under the laws of the State of California by dairymen living in the vicinity of Riverdale, many of whom assisted in hauling machinery and material for the construction of the plant or dairy. The capital stock of the association was fixed at $10,000, represented by membership certificates for the sum of $100 each; no member being entitled to hold more than one of such certificates. The association commenced operations in January, 1911. In June of that year it borrowed the sum of $8,000 to meet contractual obligations and to enable it to carry on its business. In 1918 it borrowed the further sum of $40,000 on promissory notes guaranteed by members, for the purpose of enlarging its plant. During the years here in question, and in prior years, it gathered milk and cream from producers within an area of approximately ten square miles. In 1920 the average number of its patrons was 310, of which number 74 were members. The total income for that year was approximately $700,000; the amount paid to patrons approximately $520,000; operating expenses approximately $170,000; and the amount of indebtedness paid off $13,-000. In 1921 the average number of patrons was 351, of which number 79 were members. The total income for that year was approximately $600,000; the amount paid to patrons approximately $407,000; operating expenses approximately $168,000, and the amount of indebtedness paid off $17,000. About 52 per cent. of the business transacted by the association during these years was for members and the balance for nonmembers. In carrying out the objects and purposes of the association, members and nonmembers were treated alike, aside from the fact that a dividend was paid to members, equal to 8 per cent. of the amount of their investments. But the operating expenses deducted from the proceeds of sales of products of both members and nonmembers included, not only necessary selling expenses, as provided by the statute, but also a reserve or sinking fund sufficient to pay the indebtedness of the association, with interest accruing thereon, the cost of the plant and equipment, and improvements and additions thereto, in which nonmembers had no interest. The respondent contends that the petitioner is not entitled to the exemptions claimed, for three reasons: First, because petitioner was not organized for the purposes specified in the statute; second, because the products marketed by the petitioner were not those of members only; and, third, because the entire proceeds of sales were not turned back to purchasers less the necessary selling expenses.

The purposes for which the petitioner was organized, as disclosed by its articles of incorporation, were quite general, and included the transaction of almost every kind of lawful business, but no reference was made to any such sales agencies as are defined in the revenue acts. However, if the petitioner confined its activities within the narrow sphere defined by the revenue acts, the claim of exemption should perhaps not be denied simply because of the generality of its powers in other respects. But it would seem that the exemption is necessarily limited to such associations as market the products of members only, and to such as return the proceeds of

sales to their members, less the necessary selling expenses.

In construing the statutory exemption, we are confronted by two well-established rules. One is, that the province of construction lies wholly within the domain of ambiguity, that rules of statutory construction are permissible to solve doubts, not to create them, and that it is not allowable to interpret what has no need of interpretation. Ruggles v. Illinois, 108 U. S. 526, 534, 2 S. Ct. 832, 27 L. Ed. 812; Hamilton v. Rathbone, 175 U. S. 414, 421, 20 S. Ct. 155, 44 L. Ed. 219; Wisconsin R. R. Com. v. C. B. & Q. R. R. Co., 257 U. S. 563, 589, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086. The other is, that exemptions from taxation are not favored, and that in construing statutes granting such exemptions nothing is to be taken by inference or implication. Hoge v. Railroad Co., 99 U. S. 348, 355, 25 L. Ed. 303; Bank v. Tennessee, 104 U. S. 493, 495, 26 L. Ed. 810; Bank of Commerce v. Tennessee, 161 U. S. 134, 146, 16 S. Ct. 456, 40 L. Ed. 645.

Treasury regulations promulgated under the Revenue Acts of 1918 and 1921 conform to the views we have expressed. Thus, article 522 of Regulation 45, relating to co-operative association, says: "Cooperative associations, acting as sales agents for farmers or others, in order to come within the exemption must establish that for their own account they have no net income. Cooperative dairy companies, which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses, among their members upon the basis of the quantity of milk or of butterfat in the milk furnished by such members, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the company will be subject to tax. A farmers' association is not exempt from taxation where in accounting to farmers furnishing produce for the proceeds of sales it deducts more than the necessary selling expenses incurred."

Section 231 (11) of the Revenue Act of 1924 (43 Stat. 283 [26 USCA § 982 note]) is in all respects similar to the revenue acts of the previous years, but the regulations promulgated thereunder are much broader than those promulgated under the earlier acts. Thus, article 522 of Regulation 65, relating to co-operative associations, says:

"Cooperative associations, acting as sales agents for farmers, fruit growers, live-stock growers, dairymen, etc., or engaged in the marketing of farm products, and turning back to the producers the proceeds of the sales of their products, less the necessary operating expenses, on the basis of the produce furnished by them, are exempt from income tax and shall not be required to file returns. Thus cooperative dairy companies which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses among the producers upon the basis of the quantity of milk or of butterfat in the milk furnished by such producers, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the statute and is not exempt. The accumulation and maintenance of a reasonable reserve for depreciation or possible losses or a reserve required by state statute or a reasonable sinking fund or surplus to provide for the erection of buildings and facilities required in the business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes, will not destroy the exemption."

It will be seen that under this regulation the exemption is not limited to associations organized and operated as sales agents for the purpose of marketing the products of their members, and the deduction from the gross proceeds of sales is not limited to the necessary selling expenses, but extends to a reasonable reserve for depreciation or possible loss and to a sinking fund or surplus to provide for the erection of buildings and facilities required in the business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes.

Section 231 (12) of the Revenue Act of 1926 (44 Stat. 40 [26 USCA § 982]) follows largely the regulations promulgated under the act of 1924, to which reference has been made. The 1926 act extends to associations organized and operated for the purpose of marketing the products of members or other producers, where the value of the products marketed for nonmembers does not exceed the value of the products marketed for members, and provides that exemption shall not be denied any such association because there is accumulated and maintained by it a reserve required by state law, or a reasonable reserve for any necessary purpose.

We are not particularly concerned with the regulations promulgated under the act of

1924, because the revenue acts in force at the time are our guide, and we take it that exemptions allowed by Congress can neither be enlarged nor curtailed by administrative officers or by the courts. And, taking the statutes as our guide, we are of opinion that the exemptions claimed cannot be allowed, because the petitioner was not organized and operated during the years in question as a sales agent for the purpose of marketing the products of its members, and more especially because it did not turn back to its members and producers the proceeds of sales less necessary selling expenses. In addition to necessary selling expenses, there was deducted or reserved from the proceeds of sales a sinking fund sufficient to retire the indebtedness of the petitioner, to provide for the erection of buildings and facilities required in the business, and for the purchase and installation of machinery and equipment. From this reserve there has developed a plant of considerable value, which belongs exclusively to the petitioner and its members. Expenses incurred for such purposes do not, in our opinion, fall within any reasonable definition of the term necessary selling expenses.

Nor can the petitioner derive any benefit from the Revenue Act of 1926, because that act liberalized and extended the provisions of the earlier acts in a material way, and was not made retroactive. Shwab v. Doyle, 258 U. S. 529, 536, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; Russell v. United States, 278 U. S. 181, 188, 49 S. Ct. 121, 73 L. Ed. 255; De Loss v. Commissioner of Internal Revenue (C. C. A.) 28 F.(2d) 803, 805; Commissioner of Internal Revenue v. Richfield Oil Co. (C. C. A.) 42 F.(2d) 360, 361.

Apparently, the petitioner places much reliance on the decision in United States v. Loan & Bldg. Co., 278 U. S. 55, 49 S. Ct. 39, 73 L. Ed. 180. The court there had under consideration the provisions of the different revenue acts exempting building and loan associations. No definition of such associations was given in any of the several acts, and the court held that associations of that kind and under that name, organized under the laws of the different states, and recognized as building and loan associations by the states in which organized, were entitled to the exemption, unless their operations were so related to mere money making as to constitute a gross abuse of the name. But in this case there was no general exemption of co-operative associations. The exemption was expressly limited to associations organized and operated for a specific purpose and in a specific manner.

For these reasons, we are of opinion that the claim of exemption was properly disallowed, and the decision of the Board of Tax Appeals is affirmed.