GUARANTY BUILDING & LOAN COMPANY OF MARION, INDIANA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55352. Promulgated February 20, 1933.

*L. L. Hamby, Esq.*, for the petitioner.
*Lloyd W. Creason, Esq.*, for the respondent.

OPINION.

BLACK: The petitioner contends that it is exempt from taxation under section 231 (4) of the Revenue Act of 1926, which reads as follows:

The following organizations shall be exempt from taxation under this title—
*       *       *       *       *       *       *
(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

Respondent contends that petitioner is not exempt because it is not a domestic building and loan association within the meaning of the above quoted section of the 1926 Revenue Act. During the year 1911 the Legislature of Indiana enacted the Organic Building and Loan Association Act. Section 1 of that act is printed in the margin.[1] The Legislature of Indiana in 1913 enacted a statute authorizing the formation of rural loan companies, denominated therein as " Rural Savings and Loan Associations." As pointed out in our findings of fact, petitioner was incorporated April 2, 1924, under the provisions of the 1913 statute. Sections of that statute which are deemed relevant to a decision of the issue involved in this proceeding are printed in the margin.[2]

The principal ground urged by respondent in the instant case as to why petitioner should not be classed as a building and loan associa-

---

[1] SEC. 1. That every association heretofore or hereafter incorporated under any law providing for the incorporation of building, loan fund and savings associations, and every association heretofore or hereafter incorporated under any law for the purpose of assisting its members to accumulate and invest their savings, by accumulating a fund from periodical payments on its stock, or otherwise, to be loaned among its members, shall be known in this àct as a building and loan association. Such associations organized under the laws of this state shall be known as " domestic " associations, and those organized under the laws of any other state, territory or nation, shall be known as " foreign " associations.

[2] [Burns Annotated Indiana Statutes (1926), chapter 27.]

SECTION 5127. POWERS, DUTIES, OBLIGATIONS.—2. Rural loan and savings associations organized under this act shall have and may use the rights, powers and privileges herein given and allowed, *and also those of (the) domestic building and loan association (s) under the laws of this state,* and shall be subject to the duties, the examinations and the regulations therein and herein provided, but the bonds, notes and mortgages given by its members and the evidence of debt and of security of the association, and the endorsement, assignment or transfer thereof shall be subject only to the provisions of this act. [Italics supplied.]

SECTION 5129. COMMON STOCK, SHARES.—4. The shares of common stock shall be the same as shares of stock in said domestic building and loan associations, except that said shares herein are nonvoting and the holder or owner has no liability thereon after the par value is paid into the association, and the manner of payment may be as provided and classified in the by-laws of the association; the guaranty stockholders in the association shall be jointly and severally liable, in addition to the par value of their guaranty stock, in a sum equal to the amount of their several holdings of that stock to pay any unsatisfied debt or liability of the association after all the assets and every other resource of the association shall be exhausted.

SECTION 5133. BANKING BUSINESS, WHAT MAY DO.—8. After the guaranty stock shall have been fully paid into the treasury of the association, it may, for and with its stock-

tion is that control of the organization is by statute placed in the hands of guaranty stockholders and such stockholders are entitled to receive preferential treatment in the distribution of profits and, subject to claims of creditors, are entitled, upon dissolution, to the surplus created. On this point we may point out that there is nothing in the Federal statute which restricts exemption to building and loan associations that do not issue guaranty stock.

Guaranty or nonwithdrawal permanent capital stock is authorized to be issued by building and loan associations in the manner and with the same responsibility and liability as that here involved, in the following States: Arkansas (see Laws of 1929); Colorado (see Session Laws of 1896, 1897, 1907, 1920). In "History of Building and Loan in the United States," by Morton Bodfish, at page 332, the following is stated in respect to Colorado:

> In 1920 the first three permanent stock companies were organized. [Naming them.]
>
> Nearly all associations formed since that time have been organized on the permanent or guaranty stock plan. Building and loan associations have had their greatest growth since 1920 * * *.

California (see Special Session of 1907, ch. 412; Statutes of 1909, Civil Code, Title XVI, secs. 633 to 648 (a)). In that state the associations are authorized to operate either on the guaranty plan or without the issuance of guaranty stock. Kansas (see Laws of 1899, ch. 78); Oregon (see Code of 1931, enacted June 11); and Wyoming (see Session Laws 1927, ch. 103).

We think our decision in the instant case is controlled by the decision of the Supreme Court in *United States* v. *Cambridge Loan & Building Co.*, 278 U. S. 55, affirming the Court of Claims in *Cambridge Loan & Building Co.* v. *United States*, 63 Ct. Cls. 631. There the Government contended that, because the Cambridge Association loaned most of its funds to nonmembers during the years under the 1918 Act, and received most of its funds used for loans from nonmembers in all the taxable years, and because it paid

---

holders, also do and transact the business now possessed and exercised by banks under the laws of this state, but may not do a general banking or trust business.

SECTION 5134. SURPLUS FUND—DIVIDENDS.—9. After the expenses of management and operation, taxes and other expenses are deducted, there shall be set aside from the annual or semiannual gross profits three (3) per cent thereof for the sinking fund, which is to provide against contingent losses, and also at least two (2) per cent thereof for the surplus fund of the guaranty stock; said sinking fund may be accumulated at an amount equal to six per cent of the assets of the association, and said surplus fund may be maintained when accumulated at an amount not less than ten (10) per cent in excess of the guaranty stock as a part thereof; and dividends on stock may be declared as provided in domestic building and loan associations laws: Provided, That the said surplus fund may be considered as part of said guaranty stock and share in dividends as paid-up stock.

[Acts of Indiana (1931), chapter 153.]

SEC. 7. TITLE OF ACT—AMENDMENT. That the title of the above entitled act be amended to read as follows: An act concerning guaranty loan and savings associations.

a fixed rate of dividend to prepaid stockholders different from that paid or credited to the installment or running stock members (the borrowing members) and therefore claimed by the Government not to be mutual; and because it loaned money for other purposes than the building of homes for the occupancy of members; and because a borrowing member was not required to subscribe to stock in an amount equal to his loan (being only required to subscribe to one or more shares) and being permitted to have its payments credited to the loan rather than upon the stock subscribed for; and because it accepted deposits, paying interest thereon, in amounts far beyond the needs of its borrowing members and loaned them to nonmembers when there was no application therefor by members; and because it invested some of its funds in purchasing outstanding mortgages on real estate that were given to secure loans advanced by others; and because its methods of operation were not in accord with orthodox methods that were employed by the original unincorporated building societies; it was therefore not a building and loan association within the meaning of the Acts of 1918 and 1921 (containing the same provisions as section 231(4) of the Revenue Act of 1926), although all of those things to which exceptions were taken were permitted by the laws of the State of Ohio, where the association was organized and was doing business. The Court of Claims overruled these contentions of the Government, and held that the Cambridge Association was exempt from taxation. The Supreme Court affirmed this decision, Justice Holmes delivering the opinion of the court, and, among other things, said:

But for such an association to start it must have some money to lend, and the typical member does not have it. Long before Congress dealt with loan and building associations, an esteemed writer upon the subject had insisted on the reasonableness of allowing them to issue full paid stock with fixed dividends, both in his book and upon the bench. Endlich Building Associations, 2d Ed. (1895) Sec. 462; *Folk* v. *Capital Savings & Loan Association*, 214 Pa. 529, 534, 544, 63 A. 1013 (1906). The same author recognized depositors (Sec. 56) and with more or less qualification the right to lend to outsiders (Secs. 314 et seq.) and to borrow (Secs. 297 et seq.). Under the Ohio statute the respondent had these powers, and still, as we have said, is called a building and loan association by that state. The same name was commonly used in other states and similar powers were given with more or less restriction. When Congress exempted such associations from the income tax of course it was speaking of existing societies that commonly were known as such, not of ideals that would have been hard to find and this is not left to inference alone. * * * The statutes speak of " domestic " associations, that is, associations sanctioned by the several states. They must be taken to accept with the qualifications expressly stated what the states are content to recognize, unless there is a gross misuse of the name.

It is clear from the facts detailed in our findings of fact that petitioner is recognized by the State of Indiana as a building and

loan association. We do not deem it necessary to restate the facts connected with petitioner's organization and operation. These things have been fully detailed in our findings of fact. Suffice it to say that we think these facts are sufficiently similar to the facts in *United States* v. *Cambridge Loan & Building Co.*, *supra*, as to cause that case to rule our decision in the instant case. Cf. *South Euclid Savings & Loan Co.*, 14 B. T. A. 1079; *Richland County Building & Loan Assn.*, 15 B. T. A. 537.

A decision in favor of petitioner on the first issue makes it unnecessary that we decide petitioner's alternative contention.

Reviewed by the Board.

*Decision will be entered for the petitioner.*