**LA CAISSE POPULAIRE STE. MARIE (St. Mary's Bank), Plaintiff, Appellee,**

v.

**UNITED STATES of America, Defendant, Appellant.**

No. 77–1129.

United States Court of Appeals, First Circuit.

Argued June 6, 1977.

Decided Sept. 30, 1977.

Leonard J. Henzke, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C., with whom Myron C. Baum, Acting Asst. Atty. Gen., Washington, D. C., William J. Deachman, III, U. S. Atty., Concord, N. H., Gilbert E. Andrews and William A. Friedlander, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for defendant, appellant.

James E. Higgins, Manchester, N. H., with whom E. Tupper Kinder, Stephen E. Weyl and Sheehan, Phinney, Bass & Green, Prof. Assn. of Manchester, N. H., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and CAFFREY,* District Judge.

CAFFREY, District Judge.

The question presented by this appeal is whether La Caisse Populaire Ste. Marie (St. Mary's Bank) is a credit union entitled to federal income tax exemption under the provisions of Section 501(c)(14)(A) of the Internal Revenue Code of 1954.

St. Mary's Co-operative Credit Association, founded in 1908 and chartered by the State of New Hampshire on April 9, 1909, was the first credit union in the United States.[1] Under its original charter, membership was restricted to residents of the

---

* Of the District of Massachusetts, sitting by designation.

1. The history of the credit union movement and the founding of St. Mary's is chronicled in Moody & Fite, *The Credit Union Movement, Origins and Development* (1971).

City of Manchester. N.H.Laws of 1909, chap. 303, § 3. In 1925, the New Hampshire legislature changed the name to La Caisse Populaire Ste. Marie (St. Mary's Bank) and eliminated the requirement that members be Manchester residents. N.H. Laws of 1925, chap. 340, §§ 4 and 1. In 1935, St. Mary's applied for and received from the Treasury Department a letter of exemption from federal income taxes under § 101 of the Revenue Act of 1934.

St. Mary's tax exempt status continued until January 14, 1966, when the Secretary of the Treasury revoked it. Thereafter, St. Mary's paid taxes totalling $48,965.11 for the years 1969–1974. Administrative claims for refunds were filed and denied, and on December 23, 1975, the instant action was commenced.

After a non-jury trial, the district court found that the State of New Hampshire considers St. Mary's to be a credit union and regulates it as such. It held that the recognition of St. Mary's as a credit union was not a gross misuse of the name and that St. Mary's was a credit union within the meaning of Section 501(c)(14)(A) of the Internal Revenue Code of 1954 for the years in question. *La Caisse Populaire Ste. Marie v. United States*, 425 F.Supp. 512 (D.N.H.1976).

On appeal the United States argues that St. Mary's is a hybrid mutual savings/commercial bank and not a credit union. Citing the nature of the services offered by St. Mary's and the absence of a requirement that all members share some common bond, the government contends that St. Mary's competes with banks and should be taxed as a bank. The government suggests that no significance should attach to the State's recognition of St. Mary's as a credit union. Alternatively, the government argues that the State has grossly misused the name "credit union."

Section 501(c) of the Code exempts from federal income taxation ". . . (14)(A) Credit unions without capital stock organized and operated for mutual purposes and without profit." In order to be a member of St. Mary's one must be a shareholder. Shareholder status allows one to borrow, to save and to participate in the earnings of the association. The shares do not appreciate in value, and net earnings, with the exception of certain reserves, are distributed to the members. The evidence presented at trial supports, and the government does not now contest, the correctness of the trial judge's finding that St. Mary's is organized without capital stock and is operated for mutual purposes and without profit.

■ Notwithstanding the foregoing, the government contends that St. Mary's is not a credit union because it offers such services as demand deposit accounts and real estate loans.

The government's contention that the existence of demand deposits, more commonly called checking accounts, transforms St. Mary's into a bank[2] is substantially undermined by the fact that although such accounts have been available at St. Mary's since 1939 no inference negative to St. Mary's status as a credit union was drawn on the basis of the availability of these checking accounts by the Treasury until after the lapse of twenty-seven years, *i. e.*, in 1966! There also was evidence at the trial that other credit unions in New Hampshire have been providing some sort of third-party payment orders and that at least one state has passed legislation authorizing credit unions having shares and deposits in excess of $1,000,000 to offer demand deposit accounts.[3] In addition, the Federal Credit Union Act, as amended, 12 U.S.C. §§ 1751–1790, anticipates the existence of demand deposit accounts at state-chartered credit unions. 12 U.S.C. § 1781(c)(3).

There was evidence at trial that during the years in question the number of real

---

**2.** At St. Mary's, demand deposits amount to 11% of total deposits. At Merchants National, a commercial bank in New Hampshire, demand deposits are 50% of the total.

**3.** *See* Gen.Laws of R.I. § 19–21–9.1 (Supp. 1975). *See also* Nev.Rev.Stat. § 678.470 (1975) (authorizing demand deposits).

estate loans given by St. Mary's accounted for 17% to 33% of the total number of loans made, but that the dollar amount of such loans constituted 83% to 88% of the total. The government argues that the amount of St. Mary's loans which are secured by real estate indicates that it is a savings and loan association and not a credit union.[4] More compelling, however, is the conclusion that the members' largest loan requirements are for funds for the purchase of real estate. Indeed, the government's expert conceded that real estate loans are not inconsistent with the nature of credit unionism. In fact, St. Mary's original charter provided that:

> The object of said association shall be to open credits for and make loans to its shareholders, but for and to no other persons, upon such terms, and for such times and *upon such security, real or personal,* as the association may vote or by its by-laws provide, the rate of interest, however, upon any loan not to exceed six per cent.
>
> N.H.Laws of 1909, chap. 303, § 2. (Emphasis supplied)

Also it should be noted that there was no evidence presented at trial that St. Mary's is inadequately servicing the smaller, unsecured credit needs of its members.

We hold, therefore, that the existence of demand deposit accounts and loans secured by real property did not transform St. Mary's into a bank during the years 1969–1974.

■ One of the traditional indicia of a credit union is the so-called "common bond."[5] Members of St. Mary's were originally required to be residents of Manchester, N.H.Laws of 1909, chap. 303, § 3, but the requirement was dropped in 1925. N.H. Laws of 1925, chap. 340, § 1. No written residency requirement exists today.[6] The District Court found that ". . . the members of St. Mary's do have a common bond, even though it is not spelled out in so many words."

The evidence presented at trial supports the finding that St. Mary's is a Franco-American institution. It services primarily the French-speaking residents who live on the west side of Manchester where it is located. All but one of its tellers are bilingual. The court's finding that St. Mary's members have a de facto common bond is not clearly erroneous and must be upheld. Fed.R.Civ.P. 52(a). Because we accept this finding of a common bond, we consider the absence of any formal requirement of such a bond less convincing as a measure of whether application of the name "credit union" to St. Mary's is a gross misuse.

---

**4.** The State Bank Commissioner testified that another New Hampshire credit union, L'ange-Guardien, has a greater percentage of real estate loans to total assets than St. Mary's and that all credit unions in New Hampshire account for approximately 1% of the total real estate loan market. *Cf. United States v. Connecticut National Bank,* 418 U.S. 656, 665, 94 S.Ct. 2788, 41 L.Ed.2d 1016 (1974). (Savings banks having approximately 2½% of the commercial loan market do not compete with commercial banks sufficiently to put them in the same product market for antitrust purposes.)

**5.** Subsequent to the oral argument of this case, the government requested the Court to consider portions of the Regulations of the National Credit Union Administration regarding the organization of a *federal* credit union. We note the requirement that, in establishing a federal credit union, the proposed field of membership must be specified. NCUA Regs. § 701.1. This is not controlling, however, with respect to a *state* chartered credit union. *See, e. g.,* Minn.

Stat.Ann. § 52.01 (Supp.1975) (no common bond requirement).

**6.** The By-Laws of La Caisse Populaire Ste. Marie provide in pertinent part:

> Article IV. *Conditions for Membership.* To become a member of the union, a person must meet the following requirements, to wit:
> 1. Be a shareholder of the union.
> 2. Sign a declaration that he or she will abide by the charter and by-laws of the corporation and any amendments or additions thereto.
> 3. Pay any entrance fee that may be required.
> 4. Be honest, willing to meet his dues and obligations to the union, orderly in his habits and industrious.
> 5. He must submit his application for membership or readmission to the Treasurer, who shall submit same to the board of directors for final decision.

The District Court also found that the State of New Hampshire considers St. Mary's to be a credit union. This finding, based on the testimony of the New Hampshire Bank Commissioner, is not clearly erroneous. The question on appeal is whether the State of New Hampshire has grossly misused the term "credit union."

The "gross misuse of the name" test has its origins in *United States v. Cambridge Loan & Building Co.*, 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180 (1928). Cambridge Loan & Building Company had been assessed and had paid taxes for the years 1918 through 1923. Contending that it was entitled to a tax exemption under Section 231 of the Revenue Act of 1918 and Section 231 of the Revenue Act of 1921, it brought suit for a refund. In ruling that the institution was entitled to an exemption within the meaning of the statutes, Mr. Justice Holmes stated:

> It is argued that . . . a State cannot make a bank exempt merely by calling it a building and loan association. No doubt extravagant cases might be imagined. But these associations are well known and a State is not likely to be a party to a scheme to enable a private company to avoid federal taxation by giving it a false name. The statutes speak of "domestic" associations, that is, associations sanctioned by the several States. They must be taken to accept, with the qualifications expressly stated, what the States are content to recognize, unless there is a gross misuse of the name. 278 U.S. at 59, 49 S.Ct. at 40.

Neither *Burnet v. Harmel*, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932), nor *Bowers v. Lawyers' Mortgage Co.*, 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690 (1932), rejected the "gross misuse of the name" test, as the government suggests in its brief. In *Bowers* the court expressly distinguished *Cambridge Building & Loan*, 285 U.S. at 190, 52 S.Ct. 350. *Burnet* preserved the rule that "[s]tate law may control only when the

federal taxing act, by express language or necessary implication, makes its operation dependent upon state law." 287 U.S. at 110, 53 S.Ct. at 77. This was the unspoken premise in the *Cambridge* holding that state law controls only when the state has not grossly abused the name. *See* 278 U.S. at 59, 49 S.Ct. 39.

Section 501(c)(14)(A) necessarily implies that state law controls the definition of the term credit union. There are only two types of credit unions—federally chartered and state chartered. Federal credit unions are specifically ". . . exempt from all taxation now or hereafter imposed by the United States . . . ." Section 23 of the Federal Credit Union Act of 1934; 12 U.S.C. § 1768. *See* 26 U.S.C. § 501(c)(1). Since federal credit unions are elsewhere exempt, § 501(c)(14)(A) applies to state-chartered credit unions.

Congress might have chosen to define exactly what it meant by the term "credit union" as used in § 501(c)(14)(A). In the absence of more definite legislation, we must decide on the basis of the term as it is commonly understood. *See Bowers, supra,* 285 U.S. at 190, 52 S.Ct. 350; *Cambridge, supra,* 278 U.S. at 58, 49 S.Ct. 39.

■ A credit union is a democratically controlled, cooperative, nonprofit society organized for the purpose of encouraging thrift and self-reliance among its members by creating a source of credit at a fair and reasonable rate of interest in order to improve the economic and social conditions of its members.[7] A credit union is fundamentally distinguishable from other financial institutions in that the customers may exercise effective control. At St. Mary's, for example, any act or decision of the board of directors may be reversed at the annual meeting of members. N.H.Laws of 1909, chap. 303, § 6, as amended by N.H.Laws of 1967, chap. 524, § 5. Contrariwise, while depositors of New Hampshire mutual savings banks are technically the owners, they take no part in the management of those institutions.

---

7. *See, e. g.,* Ariz.Rev.Stat. § 6–501.2 (1974); Conn.Gen.Stat.Rev. § 36–194(a) (Supp.1976); Ill.Rev.Stat. ch. 32, § 496.1 (Supp.1977); Minn.

Stat.Ann. § 52.01 (Supp.1976); N.J.Stat.Ann. § 17:13–26 (1970).

St. Mary's is indeed a hybrid institution. It has aspects of both a commercial bank and a savings and loan association. The question is not before us whether the State of New Hampshire could properly treat St. Mary's as either of those institutions. We are asked whether St. Mary's is a credit union within § 501(c)(14)(A). We hold that, for the years in question, St. Mary's met the expressly stated qualifications of § 501(c)(14)(A) and that the State of New Hampshire has not grossly misused the name by treating St. Mary's as a credit union.

*Accordingly the judgment of the district court is affirmed.*