## MANOR v. ALDRICH.

(Circuit Court of Appeals, Fifth Circuit. December 14, 1903.)

No. 1,237.

1. BUILDING AND LOAN ASSOCIATION—MEMBERS—LOSS—ASSUMPTION—STOCK—TRANSFER.

A member of a building and loan association borrowed $400 therefrom on a vendor's lien note, assigning his stock to secure the same, and gave the association a bond for the payment of dues, interest, fines, penalties, etc. Thereafter the member sold the land to defendant for $1,050, of which $650 was paid in cash, and the balance by an assumption of the lien note to the association; but the deed contained no recital with reference to a transfer of the member's stock to defendant, or obligating defendant to pay dues, premiums, etc., on the stock. The stock was transferred by the association to defendant, but without his knowledge, and the association permitted him to make payments on the note in small installments. *Held*, that the facts did not justify a finding that defendant became a stockholder in the association, so as to render him liable for stock liabilities.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

In a suit of which the Circuit Court had jurisdiction, a decree was rendered on April 12, 1901, appointing Ralph L. Aldrich, receiver of the Michigan Savings & Loan Association of Detroit, Mich., to take charge of its assets in Texas. He was empowered and directed to collect all debts due to the association. Under this order he filed in the Circuit Court a bill against F. B. Manor, seeking to collect a debt from Manor, and to enforce a vendor's lien upon real estate. The Circuit Court decided that there was due the association $583.25, with interest, and rendered a decree against Manor for that sum, "in so far only as the same can be made out of the proceeds of the sale of said premises and said stock as hereinafter directed." Manor took an appeal to this court, and, with proper specifications, assigned that the court erred in rendering this decree.

To show the questions involved, it is necessary to make a full statement of the case. On June 1, 1893, A. W. Weatherred subscribed for four shares of the capital stock of the Michigan Savings & Loan Association, of the nominal value of $100 a share, to be paid for in installments of $1 a share per month. On June 27, 1893, T. E. Duncan and his wife sold and conveyed to

Weatherred lot No. 4 of Roper's addition No. 1 to the town of Itasca, in Hill county, Tex., and as part of the purchase price of the lot Weatherred made and delivered to Duncan his note, as follows:

"400.00.                                          June 27th, 1893.

"Four months after date I promise to pay T. E. Duncan, or order, the sum of four hundred & $^0/_{100}$ dollars, with interest thereon from date at the rate of ten per centum per annum, the interest payable annually as it accrues at Itasca, Texas, the same being in part payment of a certain lot or parcel of land [describing said lot No. 4]. And it is hereby specially agreed that if this note is placed in the hands of an attorney for collection, or if collected by suit, I agree to pay ten per cent. additional on the principal and interest then due, as attorney's fee.                         A. W. Weatherred."

On August 1, 1893, Duncan assigned the note as follows: "Pay Michigan Savings & Loan Ass'n of Detroit, Michigan, or order.      T. E. Duncan."

On August 1, 1893, Weatherred, jointly with B. F. Vinson, executed and delivered to the association the following bond:

"Know all men by these presents, that A. W. Weatherred and B. F. Vinson, of the city of Itasca, county of Hill and state of Texas, [are] held and firmly bound unto the Michigan Savings & Loan Association, a corporation organized and existing under the laws of the state of Michigan, and having its principal office for the conduct of its business in the city of Detroit, county of Wayne and state of Michigan, in the sum of $400.00, lawful money of the United States of America, to which payment well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Witness our hands and seals this first day of August, A. D. 1893.

"The condition of this obligation is such that, whereas the above-bounden A. W. Weatherred is the holder of 4 shares of the $1.00 series of the capital stock (evidenced by certificate No. 6,262), now, therefore, if said A. W. Weatherred and wife or their heirs, executors, administrators or assigns shall well and truly pay or cause to be paid unto the Michigan Savings & Loan Association, its successors or assigns, the sum of $400.00 lawful money as aforesaid, at its principal office in the city of Detroit, county of Wayne and state of Michigan, in monthly installments of 4.00 dollars each (the first of said installments being due and payable on the 25th day of June, 1893), until the said shares of the $1.00 series of the capital stock of said the Michigan Savings & Loan Association, now held by said A. W. Weatherred, shall each attain the value of one hundred dollars ($100), as shown by the semi-annual statement of the auditing committee of the said the Michigan Savings & Loan Association, together with interest on the same at the rate of 2.00 dollars and 40 cents per month, and a premium of 2.00 dollars per month payable on the 25th day of each and every month, the first installment of interest and premium being due and payable on the 25th day of ——, 1893; also all fines, charges and penalties which may be imposed upon the holder of said above-mentioned 4 shares of the $1.00 series of capital stock (of) said association, by the by-laws of the said association, and shall on the maturity of said shares of stock transfer and assign the same to the Michigan Savings & Loan Association in satisfaction of one vendor's lien note executed by A. W. Weatherred to T. E. Duncan, dated June 27, 1893, now held by the Michigan Savings & Loan Association, of Detroit, Michigan, and shall also fully comply with all the other provisions of said by-laws of said association, then this obligation to be null and void; otherwise to be and remain in full force and effect.                     A. W. Weatherred.
                                                  "B. F. Vinson."

When this bond was delivered to the association the four shares of stock were hypothecated by Weatherred to the association as security for the bond. On December 21, 1893, Manor, the appellant, bought the lot of Weatherred for $1,050. He paid $650 in cash, and assumed a liability, as shown by the deed made to him, which deed is as follows:

"State of Texas, County of Hill. Know all men by these presents, that we A. W. Weatherred and Mary E. Weatherred, his wife, of the county of Hill

and state of Texas, in consideration of the sum of one thousand and fifty $1,050.00 dollars paid and secured to be paid by F. B. Manor, as follows: $650.00, six hundred and fifty dollars, cash in hand, the receipt of which is hereby acknowledged, and the assumption by the said F. B. Manor of one promissory note for the sum of $400.00, said note executed by the said Weatherred and payable to the order of T. E. Duncan and dated June 27th, 1893, and endorsed by the said Duncan to the Michigan Savings and Loan Company of Detroit, Michigan, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said F. B. Manor of the county of Hill in the state of Texas, all that certain lot, tract or parcel of land [describing said lot No. 4], together with all and singular the rights, members, hereditaments and appurtenances to the same belonging, or in any wise incident or appertaining. To have and to hold all and singular the said premises unto the said F. B. Manor and his heirs and assigns forever. And we hereby bind ourselves and our heirs, executors and administrators, to warrant and forever defend, all and singular, the said premises, untó the said F. B. Manor and his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property, premises and improvements, until the above-described note and all interest thereon are fully paid according to its face, tenor and effect, when this deed shall become absolute.

"Witness our hands this 21st day of Dec., 1893.

"A. W. Weatherred.
"Mary E. Weatherred."

F. B. Wemple, a witness for the complainant, who was secretary of the association, exhibited with his deposition the certificate for the four shares of stock issued to Weatherred, June 1, 1893, on which was a written assignment by him to F. B. Manor, but the assignment was without date. Wemple testified that the assignment was "approved on the 2d day of June, 1894." There is no evidence in the record that the certificate ever came into the possession of Manor, the appellant. Manor testified that the certificate "was not assigned to me, and I most certainly did not assume to carry out any stock contract at the time * * * mentioned." Manor, in his pleadings and evidence, claims that he paid to the association during the years 1894 to 1898, inclusive, $546, which sum he claims as a credit on the purchase money of the land; that is, he claims that the payments should have been applied in satisfaction of the note which he had assumed, as shown by the terms of the deed to him. Wemple, witness for the complainant, testifies that the payments made by Manor were applied in part to interest on the loan, and in part to payment of the premiums on the same. In brief, according to Wemple's evidence, the association treated Manor as a stockholder, and as the owner of the four shares in question, and the money he paid was applied for the purpose of maturing the stock issued to Weatherred.

The decree of the circuit court sustains this application of the payments. The contention of the appellant, in his answer and cross-bill filed in the court below and in the first assignment of error made here, is that all payments made by him, and which he claims amounted to $546, should have been applied to the payment of the $400 note and interest, the payment of which he had assumed as part of the purchase money of the lot conveyed to him, and that no part of the payments should have been applied on the stock contract.

R. M. Vaughan (F. P. Works, on the brief), for appellant.
Drew Pruit (Leroy A. Smith, on the brief), for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question to be decided is whether or not Manor assumed the obligations of Weatherred as a stockholder in the association. The

only writing in the record to which Manor is a party, and of which he is shown to have knowledge, that shows he assumed any liability, is the deed made by Weatherred and wife to Manor. It is recited in that instrument that its consideration is $1,050, of which $650 was paid in cash, and the remainder was to be paid by the assumption and payment by Manor of "one promissory note for the sum of $400, said note being executed by the said Weatherred, and payable to the order of T. E. Duncan, and dated June 27, 1893, and indorsed by the said Duncan to the Michigan Loan & Savings Company, of Detroit, Mich." The $400 note, added to the cash paid, makes the entire consideration of the conveyance. There is no language in the deed requiring Manor to assume the payment of any premiums.

The appellee contends that Manor is bound by the obligations of the bond executed by Weatherred with Vinson as surety. We find no language in the deed accepted by Manor that produces such result. That bond is for the sum of $400 only. It is true that in the condition of the bond the obligation of Weatherred, as a holder of four shares of stock, is recited, and also his obligation to make payments of interest and of premiums, as well as his liability for fines, charges, and penalties, and Weatherred, as a stockholder, may have been liable by the terms of the bond for these several sums in addition to the $400. The penalty of the bond, however, is only $400. But Manor is not a party to the bond. The bond, in its condition, contains a stipulation that Weatherred, the stockholder, should "fully comply with all the other provisions of said by-laws of said association." It cannot be said that Manor assumed any such obligation, unless it be found that he became a stockholder of the association. The only reference in the bond to the note which was assumed by Manor is that on the maturity of the shares of stock they were to be transferred to the association in satisfaction of "one vendor's lien note," describing the $400 note. We look in vain in the record for satisfactory evidence that Manor assumed the obligations of this bond. He clearly assumed the payment of the $400 note. The fact that such note is described in the bond surely cannot make him liable for the premiums, fines, charges, and penalties which may under the by-laws of the association be imposed on a member.

The receiver seeks to fasten an obligation on Manor as a shareholder in the association. Manor denies that he is a shareholder. The burden of proof, therefore, is on the receiver. It is not shown that Manor ever made an "application for membership" under section 16 of the by-laws, or ever subscribed for stock, or ever participated in the election of the officers of the association, or attended a meeting of the stockholders, or that he signed any writing indicating his membership in the association. He never received or asked for any of the benefits of membership. It is true that he knew that the association held the $400 note, and that he was to be permitted to pay it in small installments, but on one occasion he paid as much as $184.80 in one payment. The former secretary of the association produces the certificate of stock issued to Weatherred with a transfer thereon to Manor without date. It is not shown that Manor ever had the certificate in his possession. The transfer, however, is made on the

books of the association, but it is not shown that Manor had knowledge of this fact. The transfer of stock is often the evidence of a contract of much importance. If one buys stock and secures its transfer to him on the books of the corporation, he steps into the shoes of the transferror, and is liable usually for unpaid subscriptions, and besides assumes all of the responsibility of a shareholder. But if the transfer is made to him without his knowledge or consent, and without his having purchased the stock or assumed the position of a stockholder, the transfer imposes on him no liability. It would be intolerable to permit one who had subscribed for and received stock to avoid the liability and burdens of his position by loading them on another without the other's knowledge or consent. The approval of such transfer by the corporation would not bind the transferee. If the transferee did not authorize, contract for, or accept the transfer, clearly he cannot be liable as a shareholder, unless he subsequently in some way assumed to act as such. Under such circumstances a court of equity should relieve the transferee of all obligations as a shareholder. Gray's Case, 1 Ch. Div. L. R. 664.

If a transfer of stock always carried a benefit, a different rule might prevail, for it might be presumed that the transferee acquiesced in that which was to his interest. But the ownership of stock in a building and loan association by a debtor to the association is often burdensome. Where the ownership, as in this case, imposes a burden, and enables the association to apply payments made on a land purchase to a worthless stock contract, justice requires that the burden should not be imposed without clear proof that the defendant agreed to become a stockholder.

The evidence, we think, considered as a whole, shows that Manor only assumed to pay the $400 note, and that it was understood that he was to pay it in installments as drafts were drawn by the association. It is not shown, we think, that he made any contract to make payments on shares in the association or to pay premiums. The payments, therefore, that he has made should be applied to the satisfaction of the note for $400. If after making such application some part of the note remains unpaid, the receiver would be entitled to a decree against Manor for such sum, together with a vendor's lien upon the lot, and if such sum is not paid the lot should be sold under decree to satisfy it. If the amount of the payments is not clearly shown, and is not agreed on by the parties, the court should decree a reference to a master.

We think the court erred in permitting the application of parts of the payments made by Manor to the stock contract with Weatherred.

The decree of the Circuit Court is reversed, and the cause remanded, with instructions to proceed in conformity with the opinion of this court.