FIDELITY SAVINGS AND LOAN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101236, 101237.   Promulgated May 13, 1941.

*Richard G. Herndon, Esq., G. Kenneth Ralston, Esq.,* and *John M. Collins, Esq.,* for the petitioner.

*T. F. Callahan, Esq.,* for the respondent.

474

**OPINION.**

HARRON: *Issue 1.*—Petitioner contends that it is exempt from Federal income tax under the provisions of section 101 (4) of the Revenue Act of 1936.[1]

In the pleadings respondent denies that petitioner is a building and loan association, but in his brief respondent limits his argument to the contention that petitioner is not exempt from taxation under the statute because it fails to meet one of the qualifications therein, namely, that substantially all of its business is confined to making loans to its members. Respondent contends that, since practically all of the borrowers of petitioner in the taxable years were not members, it follows that petitioner is not exempt under the statute. Respondent relies upon *Wytheville Building & Land Fund Association*, 36 B. T. A. 786.

We do not decide whether or not petitioner is a building and loan association within the meaning of the statute. The question is the narrower question and it relates to the status of those to whom pe-

---

[1] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title.—

\*     \*     \*     \*     \*     \*     \*

(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; \* \* \*

titioner made loans, to the point of whether or not they were members. The Congress, since the Revenue Act of 1921, has confined the benefit of the exempting statute to those building and loan associations "substantially all of the business of which is confined to making loans to members." *Cambridge Loan & Building Co.* v. *United States*, 63 Ct. Cls. 631; affd., 278 U. S. 55; *Wytheville Building & Land Fund Association, supra.* Assuming, *arguendo*, that petitioner is a building and loan association [2] within the terms of the statute, there remains the test, which must be met, of whether or not petitioner comes within the class to which Congress has limited the exemption. Since respondent has denied that petitioner comes within the exempted class, the burden of proof is upon the petitioner to prove that it does.

First, consideration must be given to the meaning of the term "members" appearing in the statute, because petitioner says that it "considered" all borrowers to be members. The term is not defined, but it has ordinary meaning, generally understood, and such ordinary meaning is presumed to have been intended by Congress under the rules governing interpretation and construction of statutes. Also, since the Ohio statute authorizing the organization of building and loan associations and controlling the way in which the business thereof may be conducted does not specifically define the term "member" of a building and loan association, it must be assumed that under the state law that term has its ordinary meaning.[3]

Petitioner is a corporation. Generally, building and loan associations are organized in the corporate form. Reference is made to the work of a recognized writer on the subject, Joseph Sundheim, The Law of Building and Loan Associations, 3d ed., 1933, p. 4. He defines such association as a private corporation for profit, and he points out

[2] Sundheim, The Law of Building and Loan Associations, 3d ed., points out that building and loan associations operate under several different plans known as "Terminating", "Permanent", and the "Dayton or Ohio" plan. Of the latter type of association he says, p. 16: "There has developed in the State of Ohio a modification of the permanent plan (of building and loan associations) which has many distinctive features of its own. Under this plan there are no regular periodical payments. The member pays any amount, at any time he pleases, and dividends are apportioned periodically based on the amount actually paid in. No initiation fee is charged and, of course, no fines or forfeitures are exacted for nonpayment, as there is no obligation to pay. Many of the associations operating under this plan accept deposits upon which a fixed rate of interest is paid, the same as a savings bank, and which do not share in any losses, being preferred to shareholders in case of insolvency. This kind of association, while, no doubt, producing good results, more nearly resembles a bank than a building and loan association; * * *"

See also, *Lilley Building & Loan Co.* v. *Miller*, 280 Fed. 143, where the court pointed out that the company in that case, organized under the laws of Ohio applicable to building and loan associations, doing its business so that 80 percent of its receipts and 97 percent of its loans were transactions with nonmembers, and putting aside the attribute of mutuality, resembled more the ordinary savings bank than a building and loan association.

[3] Sec. 9643. [Ohio General Code.] *Definition of terms.* A corporation for the purpose of raising money to be loaned to its members, and others, shall be known in this chapter (G. C. §§ 9643 to 9675) and in the laws relating to the department of building and loan associations, as a "building and loan association" or as a "savings association. * * *

that, as was said in *Christian's Appeal*, 102 Pa. 184, "such an organization is, in fact and in law, a partnership with corporate rights in which every stockholder is a member." See also 12 C. J. S., p. 397, ¶ 3. Since such associations are organized on many diverse plans, what constitutes membership is not a matter for generalization, but in each case it is a matter for proof. However, when such association is organized as a corporation it may be said that ordinarily membership in the association is acquired by ownership of stock, 9 C. J. 932, and a stock certificate is prima facie evidence of membership. 12 C. J. S. 422. "The essential feature of membership is the ownership of stock." Sundheim, *supra*, pp. 23, 24. Sundheim points out that the terms "member", "shareholder", and "stockholder" are used indiscriminately but mean the same, and that there is no substantial difference between a member and a stockholder. In *Reynolds* v. *Georgia State Building & Loan Association*, 102 Ga. 126; 29 S. E. 187, the court said: "Membership in a building and loan association is acquired in the same manner by which membership is acquired in other corporations by becoming the holder of stock." See also, *First National Bank* v. *Dawson County*, 66 Mont. 321; 213 Pac. 1097.

Membership in such association is a formal matter. The general rule is that the act of becoming a member implies a contract intelligently entered into. 9 C. J. 932; 12 C. J. S. 419; Sundheim, *supra*, pp. 23, 24. As in the case of a stockholder, a member (the same thing) enjoys rights and liabilities. The members of a building and loan association, whether or not they are borrowers, have a mutual interest in its affairs, and, sharing alike in its profits, must assist alike in bearing its losses. Such relationship is to be distinguished from the debtor-creditor relationship which exists between such an association and borrowers who are not members. "It [a building and loan association] is wholly unlike a savings society where the borrower is not a member or otherwise interested in its business. Having no voice in the management nor interest in the earnings of the society, the borrower and it sustain the simple relation of debtor and creditor." *Eversmann* v. *Schmitt*, 53 Ohio St. 174; 41 N. E. 139, 142.

Membership is not implied from the mere fact that a loan is obtained from a building and loan association, *Manor* v. *Aldrich*, 126 Fed. 934; even where loans are restricted to members, *Kadish* v. *Garden City Equitable Loan & Building Association*, 151 Ill. 531; 38 N. E. 236; and even where stock is issued, if the borrower had no desire or intention of becoming a member and the stock was issued under a misunderstanding, and where the loan contract itself creates no other relation than that of borrower and lender. The fact that a borrower executes a mortgage on his property to secure a loan does not make him a member. *Wright* v. *Lynskey* (Court of Civil Appeals, Texas), 285 S. W. 655.

In this case petitioner contends that under its articles of incorporation it is authorized to make loans only to members by the terms of article third,[4] stating the purpose of the corporation, which, it is contended, has never been amended. The petitioner's constitution defines a member as a stockholder. With the exception of one loan in 1936, all of the mortgage loans made in 1936 and 1937 were made to persons who were not stockholders, and, hence, they were not members. Petitioner's bylaws authorize the lending of funds "to its members *and others.*" (Italics supplied.) Presumably the constitution and bylaws under which petitioner now carries on its business were adopted after the enactment of the Russell Law, 99 Ohio Laws 528, May 11, 1908, which has been the basic statute governing building and loan associations in Ohio since then. See Page's Ohio General Code, annotated, vol. 6, pp. 744–770; secs. 9643 to 9675. Under section 9645 the constitution and bylaws must be approved by the state superintendent of building and loan associations. Presumably such approval was obtained by petitioner. We do not need to determine whether or not petitioner has exceeded its authority in making loans to nonmembers, or whether or not such loans are *ultra vires.* The crucial point here is, and the record is clear on the point, that petitioner made all of its mortgage loans (except one) in the taxable years to nonmembers. There is no merit whatever to petitioner's contention that since (if) its charter limits loans to members, then *ipso facto*, all borrowers are members. Nor can any weight be given to the argument that all borrowers were "considered to be members", for the following reasons. Petitioner has not shown that all borrowers were at law members. The note and mortgage executed by borrowers does not state that the borrower is a member, or a stockholder, or that he desires to become such, or that he has made application for membership. Petitioner, by its bylaws, may pay dividends only to stockholders; it pays dividends only to stockholders. In general, petitioner's bylaws set forth the usual rights and liabilities of stockholders and do not confer any of such upon borrowers who are not stockholders. The paragraph which is set forth in the margin [5] appears on the note which each borrower is required to execute, but on its face it does not carry any implication,

---

[4] Third : Said corporation is formed for the purpose of raising money to be loaned among its members for use in buying lots or repairing houses, or other purposes, under and in accordance with the provisions of section 3833 of the Revised Statutes and the other corporation laws of Ohio applicable to such a corporation.

[5] The loan represented by this note and the mortgage securing payment of the same is made pursuant to the constitution and by-laws of The Fidelity Savings & Loan Company, which are hereby referred to and adopted herein as a part hereof, and it is further stipulated and agreed that said constitution and by-laws may be altered, amended or repealed as may now or hereafter be authorized by law ; that the same when and as so altered, amended or repealed are hereby ratified and made a part hereof ; and that this loan and the rights of the parties hereto shall be governed by the terms and conditions now or hereafter expressed in such constitution and by-laws.

contractual or otherwise, which could constitute a nonstockholding borrower a member of petitioner.

The petitioner has failed to prove that all of its mortgage borrowers (except one) were members in the taxable years. Such borrowers were no more than debtors, the relationship was only a debtor-creditor relationship.

The statute limits the class of domestic building and loan associations exempt from Federal income tax to those "substantially *all the business of which* is confined to making loans to members." (Italics supplied.) The evidence in this case does not show how many depositors petitioner had, or how many of its 27 or 28 members were depositors, but it does show that the combined time deposits and savings deposits in 1936 and 1937 aggregated totals of $830,672 and $919,504, respectively. Also, that totals of first mortgage loans outstanding in 1936 and 1937 were $754,010 and $964,905, respectively. The burden of proof upon petitioner is to show that substantially all of its business is confined to making loans to members. If substantially all of its business consists of making loans to nonmembers, and if substantially all of its receipts are from nonmembers, petitioner does not come within the exempted class. Petitioner has failed to introduce any evidence other than the summary statements of financial condition relating to its deposit and savings account activities, and this lack of evidence constitutes a partial failure to meet the burden of proof upon it. The evidence introduced relating to mortgage loans made in the taxable year is such that petitioner has failed to overcome the prima facie correctness of respondent's determination.

Petitioner relies upon *Cambridge Loan & Building Co.* v. *United States, supra.* The question considered by the Court of Claims and the Supreme Court was only whether or not that company was such an association as came within the term "building and loan association." The question did not extend to whether or not substantially all of its business was confined to making loans to members, the courts being satisfied that such requirement had been met. The Court of Claims pointed out that mortgage loans were made as follows: 1921, to members, 177; to nonmembers, 30; 1922, to members, 175; to nonmembers, 10; 1923, to members, 262; to nonmembers, 1. The Court of Claims said in its opinion that "since the passage of the 1921 act plaintiff company has substantially complied with its provisions." The question presented in this case is other than the question decided in the *Cambridge Loan & Building Co.* case.

It is held that petitioner is not entitled in the taxable years to the benefit of the exemption allowed by section 101 (4). Respondent is sustained.

*Issue 2.*—The question is whether or not petitioner realized income in 1936 and 1937 from sales under note and mortgage of pieces of

real property in which the cash payments made in the taxable year by the vendees were less than the total sale prices, for the balance of which the vendees gave monthly installment notes to petitioner. In 1936 the total of the sale prices of eleven of such properties was $33,850 and the total of cash payments received was $5,442.12. In 1937 the total of the sale prices of ten of such properties was $41,700 and the total of cash payments received was $9,183.79. Respondent has determined that with respect to the above transactions, which are the ones involved in this issue, petitioner received payment of the entire selling prices because a loan was made at each closing for an amount equal to the difference between the cash down payment and the total selling price, and respondent's position is that any cash payments received thereafter were repayments of such loans. Respondent has added to petitioner's net income in each taxable year, as realized income from profits, the difference between the adjusted cost to petitioner of each property and the total selling price. Petitioner does not appear to contest the determinations made relating to adjustments in costs of each property. Petitioner also appears to acquiesce in two determinations relating to two sales in which petitioner was paid the entire selling prices and realized gains. Effect must be given under a Rule 50 recomputation to these apparent agreements by petitioner as shown in the stipulation of some of the facts.

The "loan" which respondent refers to is found in the step followed at each closing whereby petitioner issued its check in an amount covering the balance due upon receipt of the cash down payment. The procedure and the reasons therefor are set forth fully in the findings of fact. The record on the point consists of testimony of petitioner's secretary-treasurer and an official of the state of Ohio, the incumbent superintendent of building and loan associations. Their testimony shows that the issuance of petitioner's check as a "loan" was solely for accounting purposes. The record is silent on the point whether a loan account was set up for each vendee. It probably was. But such account was a mere bookkeeping matter. Petitioner did not give up money by the use of its check in each transaction, and, likewise, petitioner did not receive money. Petitioner was not enriched. The vendee's debt was not reduced. The use of petitioner's check was a surplusage. It was not necessary. It could have been omitted. The intent and design in each transaction was to permit the vendee to acquire property on a small cash down payment and to pay the balance of the selling price in small monthly installments over a period of several years. Payments were deferred. In most instances the cash down payment was about 15 percent, or less, of the total price, and the note and mortgage was for 85 percent, or more.

Taxation is concerned with realized gains. *Lucas* v. *American Code Co.*, 280 U. S. 445, 449. It is the general contemplation of the statutes that a tax shall be levied on profits which are realized and not deferred. *Commissioner* v. *Moore*, 48 Fed. (2d) 526; *C. W. Titus, Inc.*, 33 B. T. A. 928, 932. In 1936 and 1937 petitioner did not realize profits on all the sales. It realized profits or income where the total cash collected in each year exceeded the basis of the property. Under Rule 50 this will be worked out. But in general, petitioner could not realize all the gain in each taxable year. Gain was to be realized only as the deferred payments were received. Accordingly, it has been found as a fact that petitioner did not receive the entire selling prices in the taxable years. It is held that respondent erred in adding to petitioner's taxable income amounts equal to total profit to be realized only if each vendee met his obligations throughout in the future. In each taxable year petitioner is taxable only upon the amounts by which the total cash payments collected from the vendees exceed the cost of each property to petitioner, without giving effect to the step designated as a "loan."

Respondent has not contended that the notes and mortgages given by each vendee had any fair market value on the dates received. Petitioner introduced evidence to show that they did not have any fair market value. We agree and have made such finding of fact.

Respondent does not contend, in the alternative, in the event his theory is rejected, that petitioner may not report income from the transactions in question in the manner allowed by his regulations for reporting income from deferred-payment sales. See arts. 44-3 and 44-4, Regulations 94. Petitioner has endeavored to correctly report income under that method.[6] It has treated the obligations of the vendee as having no fair market value and it has reported as income the payments in cash which have exceeded the basis of the property sold. However, according to tables attached to a stipulation, petitioner has erred in its computation of the basis of certain pieces of property, and, in such instances it realized income in the taxable years which it has not reported. For example: Richter property—petitioner's estimate of cost is $640; respondent's adjusted cost is $384.37; the cash collected in 1936 is $519.70. If petitioner acquiesces in the respondent's correction of the basis, it received income from that transaction in 1936 in the amount of $135.33. Effect shall be given to

---

[6] ART. 44-4. *Deferred-payment sale of real property not on installment plan.*—* * *

If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold, and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount being the difference between the reduced basis as provided above and the amount realized therefor. * * *

such corrections in a recomputation under Rule 50. Also, there is nothing to indicate that petitioner may not properly report income in accordance with article 44-4 of Regulations 94, under the holding made in the main issue.

*Decision will be entered under Rule 50.*