Lucille **HEISKALA** and Raymond C. **Heiskala, Plaintiffs,**

v.

**JOHNSON SPACE CENTER FEDERAL CREDIT UNION and D. Maurice Blackman, Defendants.**

Civ. A. No. H–78–1873.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 9, 1979.

David T. Lopez, Houston, Tex., for plaintiffs.

Vinson & Elkins, J. M. Hopper, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

STERLING, District Judge.

Presently pending before the Court are Defendants' motion to dismiss, or, for summary judgment and Defendant Blackman's motion to extend the time in which to answer Plaintiff's first set of interrogatories. Accepting as true the factual allegations made in Plaintiff's complaint for the purposes of Defendants' motion to dismiss, the facts may be stated as follows.

Plaintiff was discharged from her position with the JSC Federal Credit Union for criticizing certain managerial decisions, operations, and procedures of the credit union. Plaintiff contends that her First Amendment rights of freedom of expression were violated by this discharge, as well as her Fifth Amendment due process rights since she was not afforded a hearing before the discharge. Plaintiff further contends that her Fourth Amendment privacy rights, and Fifth Amendment liberty rights were violated when Defendant Blackman cleared out her desk and called an armed guard to escort Plaintiff from the building after her firing. Plaintiff finally contends that her rights under 42 U.S.C. § 1985, Title 12 §§ 1751 *et seq.* and 12 C.F.R. §§ 700–760 were violated in the course of the occurrences related above.

Defendants move to dismiss the complaint on the grounds that the governmental action, necessary to implicate the Constitutional rights claimed to have been violated, is missing and that no private cause of action is implied under the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.*, and the accompanying regulations.

■ Plaintiff's Bill of Rights claims must stand or fall with the resolution of the question of whether her discharge from the JSC Federal Credit Union should be regarded as governmental action. There is no federal right not to be discharged for criticizing one's private employer. *See, Ball v. Yarborough*, 281 F.2d 789 (5th Cir. 1960). However, the First Amendment does limit the reasons for which a public employee can be discharged. *See, Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Likewise, a person is not protected against unreasonable searches by a private party under the Fourth Amendment. See, *United States v. Sanders*, 592 F.2d 788 (5th Cir. 1979). Fifth Amendment protections do not arise where there is no federal action. *See, Junior Chamber of Commerce of Kansas City, Mo. v. Missouri State Junior Chamber of Commerce*, 508 F.2d 1031 (8th Cir. 1975). As was noted in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), "the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer."

Courts have developed a number of different theories for determining whether governmental action is present for purposes of Constitutional restrictions on such actions. *See, e. g. Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (functions exclusively reserved to the state); *Jackson, supra*, (a close nexus between the government and the challenged action); *Burton v. Wilming-*

*ton Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (symbiotic relationship between state and private entity); *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967) (state encouragement of the challenged activity).

■ The specific issue in this case is whether the federal government is so involved in the workings of federal credit unions as to make Defendant JSC Federal Credit Union's termination of Plaintiff the action of the federal government. In 1934 Congress passed the Federal Credit Union Act establishing a system of credit unions to help stabilize the credit structure of the United States and to make credit more available to people of small means. A "federal credit union" is defined by statute to be "a cooperative association organized in accordance with the provisions of this chapter for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752.

"With regard to federal credit unions, the act makes detailed provision concerning the following: organization certificates and their approval; by-laws and powers; management, directors, officers, and committees; members and membership; reserves and dividends; fees payable by, reports by, and examinations of, such credit unions; taxation and exemptions therefrom; the allotment of space in federal buildings to credit unions composed mainly of federal employees; and conversion from federal to state credit unions, and vice versa." 13 Am.Jur.2d *Building and Loan Associations* § 5 (1964).

Plaintiff, perhaps in a judicious conservation of legal energy, does not argue that government action is present on the theory that the promotion of thrift is a function exclusively reserved to the federal government. Nor does Plaintiff argue that the government encouraged in any way her discharge from the JSC Federal Credit Union. The parties have argued the motion to dismiss mainly in terms of the *Jackson* test. In *Jackson,* the Court noted that "the in-quiry must be whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." 419 U.S. at 351, 95 S.Ct. at 453. In *Jackson,* the plaintiff brought suit against a privately owned and operated utility company for terminating her electric service without affording her prior notice or a hearing. In upholding the District Court's dismissal of the claim, the Supreme Court observed that, although the public utility was heavily regulated by the state there was no indication that there was any connection between the state and the utility company's action of terminating the plaintiff's electric service. The *Jackson* nexus test is not satisfied unless the government is involved with the activity that causes the actual injury. *See, Roberts v. Cameron-Brown Co.,* 556 F.2d 356 (5th Cir. 1977).

Plaintiff argues that the necessary nexus exists because the National Credit Union Administration Board (Board) has promulgated form bylaws which touch on credit union employee termination. A review of the statutes, regulations and bylaws demonstrates that there is no connection on that basis between the government and Defendants' action in terminating Plaintiff. Federal credit unions are under the supervision of the Board, which is made up of three persons appointed by the president. 12 U.S.C. §§ 1756 and 1752a(b). The Board prepares a form of organization certificate and a form of bylaws to be used by persons desiring to incorporate a federal credit union. 12 U.S.C. § 1758, 12 C.F.R. § 701.14(e). The bylaws contain provisions dealing with employee termination. Having progressed this far, Plaintiff's bylaws-nexus argument suffers in that she contends that she was terminated in a manner inconsistent with the bylaws. Article VIII, Sec. 7 of the bylaws provides that "the board [of the individual credit union] shall employ, fix the compensation, and prescribe the duties of such employees as may in the discretion of the board be necessary, and have the power to remove such employees, unless it

has delegated these powers to the treasurer or manager; except that neither the board, the treasurer, nor the manager shall have the power or the duty to employ, prescribe the duties of, or remove any loan officer appointed by the credit committee, or necessary clerical and auditing assistance employed or utilized by the supervisory committee." Plaintiff was employed as an assistant to the supervisory committee and, therefore, was not subject to dismissal under the above bylaws. Plaintiff was discharged by Defendant Blackman, a member of the board of directors of the JSC Federal Credit Union and chairman of the supervisory committee. The bylaws grant the supervisory committee the power to "employ and use such clerical and auditing assistance as may be required to carry out its responsibilities prescribed by this article, and may request the board to provide compensation for such assistance." Article X, Sec. 3. No specific provision empowers the supervisory committee to discharge its employees. Article XIX, Sec. 3 provides that "notwithstanding any other provisions in these bylaws, any director, committee member, officer, or employee of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for the purpose, but only after an opportunity has been given him to be heard." A review of these bylaws fails to show any meaningful connection between the bylaws, promulgated and approved by the board, and Plaintiff's alleged dismissal for criticizing credit union policies. The bylaws do not mandate, encourage, or approve employee dismissals under such circumstances. Plaintiff's complaint fails to negotiate the *Jackson* hurdle.

In *Burton, supra,* the Supreme Court set forth the so-called symbiotic relationship test for a finding of state action in circumstances in which the "State has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." 365 U.S. at 725, 81 S.Ct. at 862. In *Burton,* a Delaware state agency rented space in a public building to a private lessee-restaurant which refused to serve blacks. Noting the benefits accruing to the state in the form of rental charges and increased use of the state-owned parking facilities, as well as the lessee's affirmative representation that racial discrimination was good for business, the Supreme Court held that the Fourteenth Amendment barred Delaware from realizing a benefit from the racial discrimination practiced by its lessee. The holding was specifically narrowed to situations "[where] a State leases public property in the manner and for the purpose shown to have been the case here, the proscriptions of the Fourteenth Amendment must be complied with by the lessee . . . ." 365 U.S. at 726, 81 S.Ct. at 862.

The present case could possibly fall squarely within the first part of the *Burton* holding. 12 U.S.C. § 1770 (1969) (which was renumbered 1 U.S.C. § 124 by Pub.L. 91–468, § 1(2), Oct. 19, 1970, 84 Stat. 994), provides that under certain conditions a federal credit union may receive rent-free space in federal buildings. Under *Burton* it is not necessary to pinpoint a nexus between the challenged activity and the government; a showing of joint participation or interdependence between the government and the private entity will suffice. *See, Musso v. Suriano,* 586 F.2d 59, 63 (7th Cir. 1978). However, government action in this instance consists entirely of regulation. Regulation is not enough to make the private entity and the government agency interdependent. *Jackson, supra,* and *Roberts, supra.* The control and management of a federal credit union is not vested in the federal government, but democratically in the members themselves and in their duly elected board of directors. 12 U.S.C. §§ 1760, 1761, and *La Caisse Populaire Ste-Marie v. United States,* 563 F.2d 505 (1 Cir. 1977), and *Social Security Administration Baltimore Federal Credit Union v. United States,* 138 F.Supp. 639 (D.Md. 1956). The determination of whether government action exists "hinges on the

weighing of a number of variables, principally the degree of government involvement, the offensiveness of the conduct, and the value of preserving a private sector free from the constitutional requirements applicable to government institutions." *Wahba v. New York University*, 492 F.2d 96, 102 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

The discharge of an employee for criticizing her superiors, under the circumstances of this case where the Plaintiff is both employee and member of the credit union, is offensive. Courts have been particularly solicitous of First Amendment freedoms in such cases. *See, e. g. Holodnak v. Avco Corp., Avco-Lycoming Division, Stratford, Connecticut*, 514 F.2d 285 (2d Cir. 1975) and *McQueen v. Druker*, 317 F.Supp. 1122 (D.Mass.1970), *aff'd.* 438 F.2d 781 (1 Cir. 1971). However, the Court is of the opinion that the slight degree of government *involvement* in the business of federal credit unions does not warrant applying Constitutional requirements to these democratically controlled, nonprofit cooperatives. Therefore, defendants' motion to dismiss Plaintiff's First, Fourth, and Fifth Amendment claims will be granted.

▮▮▮ Defendants also move to dismiss Plaintiff's § 1985 claim. In her complaint, Plaintiff claims that the Defendants "conspired to deprive Plaintiff Lucille Heiskala of her employment," and that "the termination of the Plaintiff was discriminatory and a part and the result of the unlawful conspiracy to deprive the Plaintiff of her rights." The applicable language of 42 U.S.C. § 1985 provides:

"(3) If two or more persons in any State or Territory conspire . . .. for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . .. the party so injured or deprived may have an action for the recovery of damages . . . ."

In *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Court interpreted the statute to mean that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action[s]."

▮▮▮ The Court is of the opinion that Plaintiff's complaint fails to state a cause of action under § 1985(3) for a number of reasons. In order to allege a cause of action under that statute, it is necessary to allege racial, or perhaps otherwise class-based, invidiously discriminatory animus. *See, Bova v. Pipefitters & Plumbers Local*, 554 F.2d 226 (5th Cir. 1977) and *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc). The fact that the complaint shows that Plaintiff is a woman and that at least one of the alleged conspiratorial firing supervisors was male is not sufficient to allege the required class-based animus. *See, Jackson v. Cox*, 540 F.2d 209 (5th Cir. 1976). Since the complaint fails to allege a class-based animus, this Court need not reach the issue left open in *Griffin, supra*, and *McLellan, supra*, whether § 1985(3) reaches non-racial discrimination. It is well settled that § 1985(3) is a purely remedial statute "providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Great American Federal Savings & Loan Association v. Novotny*, —— U.S. ——, ——, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979).

▮▮▮ Pared of the First, Fourth, and Fifth Amendment claims because of the lack of government action, Plaintiff's complaint attempts to allege a cause of action under § 1985(3) for discriminatory discharge and a private cause of action under the Federal Credit Union Act and the accompanying regulations. In *Novotny*, the Supreme Court held that § 1985(3) may not be invoked to redress violations of Title VII, 42 U.S.C. § 2000e *et seq.* Discharge on account of sex would certainly be a violation of Title VII. Discharge on account of criticizing federal credit union policies does not allege a class cognizable under § 1985(3). *See, Carchman v. Korman Corp.*,

**454**

594 F.2d 354 (3rd Cir. 1979). Plaintiff's cause of action based on § 1985(3) must therefore be dismissed.

■ Finally, Plaintiff argues that she has an implied cause of action under the Federal Credit Union Act, 12 U.S.C. §§ 1751 *et seq.* and 12 C.F.R. §§ 700–760. In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) the Court set out the test for determining whether a private cause of action is implied under a statute not expressly providing one:

> "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' (citation omitted)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? (citation omitted). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? (citation omitted). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

The Court is of the opinion that Plaintiff's cause of action fails to satisfy the *Cort* test in all four particulars. It would unduly lengthen this opinion for the Court to elaborate on its determination that the establishment of a system of federal credit unions and the implementing regulations were not intended to create a federal cause of action for discharged credit union employees. Based on the foregoing, it is hereby

ORDERED that Defendants' motion to dismiss the complaint is granted. In light of the Court's ruling, Defendant Blackman's motion to extend the time in which to answer Plaintiff's first set of interrogatories is mooted.