In re Mark Alan **ROBERTS**, Debtor.

**CONSTRUCTION EQUIPMENT FEDERAL CREDIT UNION,**
Appellant,

v.

**Mark Alan ROBERTS, Appellee.**

No. 92–3228.

United States District Court,
C.D. Illinois, Springfield Division.

Jan. 21, 1993.

Thomas L. Perkins, Peoria, IL, for appellant.

Alan D. Bourey, Decatur, IL, for appellee.

## OPINION

RICHARD MILLS, District Judge:

Mark Alan Roberts took out student loans to go to Eastern Illinois University.

He did, in fact, go to college and now wants to renege on over $25,000 in student loans by filing for bankruptcy.

*Quaere.* Did Congress really say what it meant—and mean what it said—when it exempted educational loans made pursuant to any program funded by nonprofit institutions from discharge in bankruptcy?

Construction Equipment Federal Credit Union has appealed the Bankruptcy Court's decision denying its motion for summary judgment and allowing Mark Alan Roberts' motion for summary judgment, thereby discharging his loan obligation to the Credit Union.

## I. FACTS

Construction Equipment Federal Credit merged with Decatur Bell Credit Union (hereinafter collectively referred to as the Credit Union) effective June 1, 1991. Prior to the merger, the Credit Union was organized and existed as a state chartered credit union under the Illinois Credit Union Act. Ill.Rev.Stat. ch. 17, ¶ 4401 et seq. Accordingly, it existed as a nonprofit association with tax exempt status. *See* 26 U.S.C. § 501(c)(14)(A).

In 1986, the Credit Union established an educational loan program with the following provisions:

1. student borrowers were required to provide proof of enrollment at an educational institution and an estimate of their tuition, books and living expenses in support of the loan application;

2. loan amounts were generally based on the student's estimate of expenses;

3. educational loans accrued interest at a flat rate of nine percent;

4. loans were made by short term, single pay notes and were renewable if the student continued in school;

5. no payments were required on the outstanding principle or interest as long as the student remained enrolled in school;

6. previous loan balances were combined into a new note that encompassed the entire loan balance;

7. payment arrangements were to be made within 6 months of graduation or leaving school and the outstanding balance was amortized at 9% over a period not to exceed ten years.

From August, 1988 to October, 1989, Mark Alan Roberts obtained four student loans from the Credit Union pursuant to its established procedure for making student loans. Roberts provided the Credit Union with proof of enrollment and an estimate for expenses and it made loans to him totaling $22,300.00. These loans were later consolidated into a single promissory note for $25,327.09. The note was repayable over ten years with interest at 9% per annum.

On November 22, 1991, 7 months after his first loan payment, Roberts filed for Chapter 7 bankruptcy and sought to discharge his entire student loan obligation. Two months later, the Credit Union filed its complaint to have Robert's student loan obligation determined nondischargeable pursuant to § 523(a)(8) of the Bankruptcy Code because it was a nonprofit institution which made a loan to him pursuant to an educational loan program.

The parties filed cross motions for summary judgment. On August 10, 1992, in reliance on *In re Sinclair–Ganos,* 133 B.R. 382 (W.D.Mich.1991), the Bankruptcy Court found that the Credit Union was not a nonprofit institution for purposes of § 523(a)(8); accordingly, it found that the loan to the Credit Union was dischargeable.

The Credit Union filed this appeal pursuant to 28 U.S.C. § 158(a). It contends that the Bankruptcy Court ruled contrary to the plain language of § 523(a)(8). Roberts counters that § 523(a)(8) is intended to protect governmental loan programs only. But, even if the Credit Union is a nonprofit institution within the meaning of § 523(a)(8), Roberts argues that only $10,000 his loan should be nondischargeable because the Credit Union exceeded its own lending limits for educational loans; in addition—he says—the case should be remanded to the Bankruptcy Court to determine the actual amount of money spent on educational expenses.

## II. ANALYSIS

When the plain language of the Bankruptcy Code is clear, the court need not inquire beyond the text of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, — U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Rather, it must enforce the statute according to its terms unless literal application would produce a result "demonstrably at odds with the intention of its drafters." *Ron Pair Enterprises*, 489 U.S. at 1031, 109 S.Ct. at 1030–31.

Section 523(a)(8) provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, ...

Prior to 1984, this section was limited to nonprofit institutions of higher education. In 1984, the qualifying statutory language was eliminated.

In *In re Sinclair–Ganos*, 133 B.R. 382 (W.D.Mich.1991), the Lincoln Park Community Credit Union filed a complaint with the bankruptcy court asking it to determine that educational loans totaling $32,677.84 made to Beverly Sinclair–Ganos were a nondischargeable debt under 11 U.S.C. § 523(a)(8). The court addressed the question of whether the credit union qualified as a nonprofit institution under § 523(a)(8). The court noted that it found no enlightening legislative history or cases which discussed, let alone supported, the position that a credit union is a nonprofit institution for purposes of § 523(a)(8). The court reasoned that because a credit union is a lending institution which competes with banks, there is no reason to give it a more favorable position in proceedings which determine the dischargeability of student loans.

Accordingly, it found that a credit union is not a nonprofit institution and discharged Ms. Sinclair–Ganos' student loan debt.

After reviewing the history and development of banks and credit unions within the United States, this Court respectfully disagrees with the *Sinclair–Ganos* court's conclusions. This country's dual bank regulatory system is a result of *McCulloch v. Maryland*, 4 Wheat (U.S.) 316, 4 L.Ed. 579 (1819), which held that Congress had the authority to charter banks under the "necessary and proper" clause of Article I and the states were able to regulate banks pursuant to their police power under the Constitution. *La Caisse Populaire Ste–Marie v. United States*, 425 F.Supp. 512, 515 (D.C.N.H.1976). Consequently, both Congress and the states may charter an assortment of financial institutions including national or state banks, savings and loan associations and mutual savings banks, and federal or state credit unions.

Banks are for profit institutions which have the option of becoming members of the Federal Reserve. 12 U.S.C. § 321; *La Caisse*, 425 F.Supp. at 516. All national banks are subject to federal law and also to nonconflicting state laws. 12 U.S.C. § 21; *Barany v. Buller*, 670 F.2d 726 (1982). National banks may form branches, are allowed to make loans or investments for all of the purposes permitted to financial institutions, and can accept both demand and time deposits. *La Caisse*, 425 F.Supp. at 516; 12 U.S.C. § 36.

The first state regulated credit unions were established in 1909, and in 1934 Congress created federal credit unions. *La Caisse*, 425 F.Supp. at 517; *Barany*, 670 F.2d at 733.[1] In 1970, the National Credit Union Administration was created which took over the chartering, supervision and examination of federal credit unions from the Credit Union National Association, while state authorities continued to regulate state chartered credit unions. *Barany*, 670 F.2d at 733–34. State and

1. Both cases provide a thorough early history of these institutions which the Court will not repeat here. As a side note, the *La Caisse Popu-laire Ste–Marie* case involves the first credit union organized in the United States.

federal requirements for a credit union are similar. There must be a common bond (occupational or associational), adequate economic prospects, persons willing to act as directors, and democratic control of the institution. *La Caisse*, 425 F.Supp. at 517. Generally, credit unions may only make loans to their members. Ill.Rev.Stat. ch. 17, ¶ 4447. Finally, credit unions chartered in Illinois must be nonprofit. Ill.Rev.Stat. ch. 17, ¶ 4402.

█ Clearly, credit unions are different from banks and not in direct competition with each other as suggested by the *Sinclair–Ganos* court since banks do not have the same geographical limitations and restrictions concerning to whom loans can be made as credit unions. Accordingly, this Court does not agree that the similarities between these institutions warrant an interpretation of § 523(a)(8) which is against the plain language of the statute.

In the case at bench, it is not disputed that the Credit Union is a nonprofit institution. Section 523(a)(8) prohibits the discharge of an educational loan made pursuant to *any* program funded by a nonprofit association. The Credit Union loaned money to Roberts pursuant to its student loan program. Accordingly, the Court finds that it comes within the protection of § 523(a)(8).

█ The Court rejects Roberts' alternative assertion that only $10,000 of the loan should be nondischargeable since the Credit Union violated its student loan policy by authorizing student loans in excess of $10,000. It was common practice for the Credit Union's Loan Committee to authorize student loans in excess of the $10,000 ceiling as it did in Roberts' case. Consequently, the Court cannot find that the Credit Union's deviation from its written policy warrants a discharge of $15,327.09 of Roberts' educational loan debt.

█ In addition, the Court does not agree with Roberts' argument that this case should be remanded to the Bankruptcy Court for a determination of how much of Roberts' educational loans actually went for educational expenses. The focus of § 523(a)(8) is on the nature and character of the loan, not how the recipient actually spent the money. *In re Barth*, 86 B.R. 146 (W.D.Wis.1988). In this case, there is no question that Roberts' loan was made for the purpose of allowing him to obtain an education. Consequently, it is irrelevant whether he actually spent all or part of the funds for that purpose because under § 523(a)(8), the entire amount is nondischargeable.

### III. CONCLUSION

In the *La Caisse* case, the court was asked to determine whether the first organized credit union in the United States, St. Mary's Bank, remained a credit union after nearly 70 years of existence, producing a membership of such size that its depository and lending authorization no longer permitted it to be compiled in the same tables of the New Hampshire Bank Commissioner's Annual Report as other credit unions. The court noted that although St. Mary's had a competitive advantage over other financial institutions because of its tax exempt status, it would not rewrite banking laws or define new tests for determining when an institution is a credit union when Congress, through legislation, had not seen fit to do so.

Likewise, this Court declines to invent a test for determining when a nonprofit institution is—or is not—a nonprofit institution under § 523(a)(8) of the Bankruptcy Code. As stated by the *La Caisse* court, "[i]f the law needs redefining and rewriting, that is a task for the Congress, not the courts." *Id.* 425 F.Supp. at 523.

*Ergo*, the decision of the Bankruptcy Court discharging Mark Roberts' educational loan is REVERSED.

Case closed.