In re John Carl DELBONIS, Armanda Delbonis, Debtors.

TI FEDERAL CREDIT UNION, Plaintiff,

v.

John Carl DELBONIS, Defendant.

Bankruptcy No. 93–18441–WCH.

Adv. No. 93–2003.

United States Bankruptcy Court, D. Massachusetts.

June 22, 1994.

Theodore J. Koban, Attleboro, MA, for debtors.

Paul F. Lorincz, Coogan, Smith, Bennett, McGahan, Lorincz & Jacobi, Attleboro, MA, for TI Federal Credit Union.

## DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

This is an adversary proceeding brought by TI Federal Credit Union ("TI") against Debtor John Carl Delbonis ("Debtor") to determine the dischargeability of certain loans pursuant to 11 U.S.C. § 523(a)(8).[1]

---

1. "§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a govern-
mental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years

The parties have submitted the issues to the Court for decision on an agreed statement of facts. The debtor has also filed a motion for summary judgment.

### Agreed Facts

1. TI is a Federal credit union organized under the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* It is not a governmental unit, nor is it a state chartered nonprofit corporation. It is exempt from taxation to the extent provided by 12 U.S.C. § 1768.[2]

2. The loan monies advanced to Debtor were not guarantied or funded under any governmental program.

3. Between December 9, 1986 and January 4, 1991, TI extended $43,114,87 in loans (the "Loans") to Debtor. As of March 25, 1993 the principal balance due to TI was $32,618.27.

4. All loans were made under TI's "Education Loan" program. The terms of that program provide for a lower than standard interest rate. It is also required that all loan proceeds must be made payable to a school.

5. The loan proceeds were used solely for the educational expenses of Debtor's children and his wife. Neither Debtor's wife nor his children were liable for the repayment of the loans.

6. TI's Charter authorizes it to issue shares with a par value of $5.00. Section 5(c) of the By–Laws grants to the board of directors the "authority to declare and autho-

rize the payment of annual or semiannual dividends on shares of members."

### Discussion

### Educational Loans

■ It has been stipulated that the proceeds of the Loans were used solely for the educational expenses of Debtor's children and wife. I agree with Judge Harrington that loans incurred to educate members of a debtor's family qualify as educational loans within the meaning of 11 U.S.C. § 523(a)(8). *Education Resources Institute v. Wilcon (In re Wilcon)*, 143 B.R. 4 (D.Mass.1992).

### Nonprofit Status

As applicable here, § 523(a)(8) makes nondischargeable educational loans "made under any program funded ... by a ... nonprofit institution." TI funded the Loans.

TI contends that it is a "nonprofit institution" as that term is used in the statute based upon its stipulated tax exemption under 12 U.S.C. § 1768, quoted above, as well as its exempt status for purposes of Federal income taxation pursuant to 26 U.S.C. § 501(c)(1)[3].

Prior to an amendment in 1984, it was required that the nonprofit institution be one "of higher education." *See* S.Rep. 230, 96th Cong., 1st Sess. 3 (1979) U.S.Code Cong. & Admin.News 1979, pp. 936, 937. The amendment struck those words, P.L. No. 98–353, § 454(a)(2), demonstrating a Congressional

---

(exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents...."

2. "The Federal credit unions organized hereunder ... shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of Federal credit unions shall be subject to Federal, State, Territorial and local taxation to the same extent as other similar property is taxed." 12 U.S.C. § 1768 (passim).

3. "(a) **Exemption from taxation.**—An organization described in subsection (c) ... shall be exempt from taxation....

"(c) **List of exempt organizations.**—The following organizations are referred to in subsection (a):

(1) any corporation organized under Act of Congress which is an instrumentality of the United States but only if such corporation—

(A) is exempt from Federal income taxes—

(i) under such Act as amended and supplemented before July 18, 1984, or

(ii) under this title without regard to any provision of law which is not contained in this title and which is not contained in a revenue Act...." 26 U.S.C. § 501 (passim).

intent to include all nonprofit organizations as eligible loan grantors who could benefit from the nondischargeability provision.

The issue appears to have been discussed in only two cases. In the first, *Lincoln Park Community Credit Union v. Sinclair–Ganos (In re Sinclair–Ganos)*, 133 B.R. 382 (Bankr. W.D.Mich.1981), Judge Nims reasoned as follows:

> "[N]o cases have been found which discuss, let alone support, the position that a credit union is a nonprofit institution for purposes of this subsection and no enlightening legislative history has been uncovered. Because a credit union is a lending institution which competes with banks, there is no apparent reason to give a credit union a more favorable position in proceedings determining the dischargeability of student loans."

*Id.* at 384.

In the later decision, *Construction Equipment Federal Credit Union v. Roberts (In re Roberts)*, 149 B.R. 547 (C.D.Ill.1993), Judge Mills specifically disagreed with *Sinclair–Ganos*:

> "Clearly, credit unions are different from banks and not in direct competition with each other as suggested by the *Sinclair–Ganos* court since banks do not have the same geographical limitations and restrictions concerning to whom loans can be made as credit unions. Accordingly, this Court does not agree that the similarities between these institutions warrant an interpretation of § 523(a)(8) which is against the plain language of the statute."

*Id.* at 551. These remarks appear to be obiter dicta since, as he states, "In the case at bench, it is not disputed that the Credit Union is a nonprofit institution." *Id.*

In any event, I do not believe that the extent to which a federal credit union resembles a bank should be determinative of the issue before the court.

The Federal Credit Union Act defines a federal credit union as "a cooperative association organized ... for the purpose of promoting thrift among its members and creating a source of credit for provident and productive purposes." 12 U.S.C. § 1752(1). It is authorized to pay dividends on its shares. 12 U.S.C. § 1763. These functions could be accomplished by a profit making organization.

■ The fact that TI is exempted from non-property taxation on the basis of its creation under the Federal Credit Union Act, or its freedom from taxation under the Internal Revenue Code does not of itself qualify it as a nonprofit institution.

■ There is no necessary correlation between tax exempt status and nonprofit status. As just one example, a religious organization which expends a substantial part of its activities in intervening in political campaigns is still not organized for profit even though it is barred from tax exempt status by 26 U.S.C. § 501(c)(3).

I have been unable to find a definition of "nonprofit organization" in the abstract. It generally appears in a statute where it is defined. The Bankruptcy Code is certainly in the minority in not providing guidance in this regard.

The nearest resemblance to a common law rule appears to be the decision in *Read v. Tidewater Coal Exchange, Inc.*, 13 Del.Ch. 195, 116 A. 898 (1922). The Chancellor was required to determine whether the defendant corporation could have been properly formed under the Delaware general corporation law for non-profit purposes. The decision required a detailed examination of the issue

> "When may a corporation be said to be organized not for profit. Or, putting the converse of the question, when may a corporation be said to be organized for profit?"

13 Del.Ch. at 208, 116 A. at 904.

The following remarks are helpful:

> "Whether dividends are expected to be paid may, generally speaking, be taken as the test by which we are to determine whether, or not, a given corporation is organized for profit. Perhaps a better way to put it would be to say that a corporation is for profit when its purpose is, whether dividends are intended to be declared or not, to make a profit on the business it does.... Nor would a mere declaration in

its certificate of incorporation that it was organized not for profit, be sufficient to stamp upon it a nonprofit character. In each case, when the corporation is examined, the true facts must be ascertained and the corporation judged accordingly, no matter what its scheme of operation or its pretensions may be."

13 Del.Ch. at 209–210, 116 A. at 904.

I agree with the decision in *Read*. In my opinion non-profit organizations do not normally have shareholders nor do they pay dividends to those involved in them. Since TI does both, I find that it is not a nonprofit organization within the meaning of § 523(a)(8). As a result, the loans to Debtor are not loans which could be held to be nondischargeable under that section.

Debtor's motion for summary judgment must be granted. A separate order will be entered.

Debtor has also moved for the assessment of fees and costs pursuant to 11 U.S.C. § 523(d). Considering the novelty of the basic issue involved in this case, I do not believe that TI's position was "not substantially justified" and the motion is denied.