**TI FEDERAL CREDIT UNION, Appellant,**

v.

**John Carl DELBONIS, Appellee.**

**In re DELBONIS.**

**Civ. A. No. 94–11723–RCL.**

United States District Court, D. Massachusetts.

June 7, 1995.

Paul F. Lorincz, Coogan, Smith, Bennett, McGahan, Lorincz & Jacobi, Attleboro, MA, for appellant TI Federal Credit Union.

Theodore J. Koban, Koban & Cerrone, Attleboro, MA, for debtor/appellee John Carl Delbonis.

**2**

## MEMORANDUM AND ORDER
LINDSAY, District Judge.

"What profit hath a man of all his labor which he taketh under the sun?" [1] In this case, the court considers whether members of a federal credit union join together for the purpose of making a profit of their labor.

This is an appeal from an order of Judge Hillman of the Bankruptcy Court granting summary judgment to John Carl Delbonis, the debtor, appellee in this court.[2] Judge Hillman ruled that the appellant federal credit union is not a nonprofit institution, and that 11 U.S.C. § 523(a)(8), therefore, does not preclude discharge of a debt resulting from educational loans made by the credit union to Delbonis. This court has reached the opposite conclusion.

### 1. Facts and Procedural History

Delbonis obtained student loans from TI Federal Credit Union ("TIFCU"). He later filed for bankruptcy under Chapter 7 of the Bankruptcy Code. In the bankruptcy proceeding, TIFCU filed an adversary proceeding against Delbonis seeking a declaration that his debt to TIFCU is nondischargeable under § 523(a)(8). Section 523(a)(8) provides, in part, that a discharge under the Bankruptcy Code "does not discharge an individual debtor from any debt ... for an educational ... loan made ... under any program funded in whole or in part by a governmental unit or nonprofit institution...."

The parties submitted an agreed statement of facts to Judge Hillman, and Delbonis moved for summary judgment. The sole issue on the motion was whether TIFCU is a nonprofit institution, such that educational loans it makes are nondischargeable under § 523(a)(8). As noted above, Judge Hillman granted the motion, deciding that TIFCU is not a nonprofit institution.

After Judge Hillman's ruling, TIFCU moved to amend the agreed statement of facts and to amend the decision and order for judgment. TIFCU had earlier stipulated that it was not a "governmental unit" under § 523(a)(8). TIFCU sought to correct that

stipulation, (which, it argued, was actually a question of law, not of fact) and asserted that TIFCU was in fact a "federal instrumentality." Judge Hillman denied the motion without writing an opinion.

TIFCU appeals both of Judge Hillman's rulings.

Following are facts as to which there is no disagreement.

TIFCU extended $43,114.87 in loans to Delbonis, and as of March 25, 1993, the principal balance of those loans was $32,618.27. The loans were made under TIFCU's educational loan program, which provided for a lower-than-standard interest rate and required that all loan proceeds be made payable to a school. The loans were to be used solely for the educational expenses of Delbonis' children and his wife.

TIFCU is a federal credit union organized under the Federal Credit Union Act, 12 U.S.C. § 1751 et seq. Its charter authorizes it to issue shares with a par value of $5.00. Its by-laws grant the board of directors the authority to "declare and authorize the payment of annual or semiannual dividends on shares of members." [3]

### 2. Discussion

■ To date, four courts (including the Bankruptcy Court in this case) have directly dealt with the question of whether a credit union is a nonprofit institution under § 523(a)(8). The line-up is now three to one in favor of holding that a credit union is not a nonprofit institution.

The first court to tackle the issue was the Bankruptcy Court in the Western District of Michigan. In re Sinclair–Ganos, 133 B.R. 382 (Bankr.W.D.Mich.1991). The entire discussion reads as follows:

[N]o cases have been found which discuss, let alone support, the position that a credit

---

1. *Ecclesiastes*, 1:3.

2. *In re Delbonis*, 169 B.R. 1 (Bankr.D.Mass. 1994).

3. The Federal Credit Union Act authorizes a federal credit union to declare and pay dividends on equity interests in the credit union represented by shares of stock, share certificates and share draft accounts. 12 U.S.C. § 1763.

union is a nonprofit institution for purposes of this subsection and no enlightening legislative history has been uncovered. Because a credit union is a lending institution which competes with banks, there is no apparent reason to give a credit union a more favorable position in proceedings determining the dischargeability of student loans. Thus, this court holds that a credit union is not a nonprofit institution under 11 U.S.C. § 523(a)(8) and Beverly Sinclair–Ganos' debt to the Lincoln Park Community Credit Union is discharged.

*Id.* at 384.

The District Court in the Central District of Illinois differed. *In re Roberts,* 149 B.R. 547 (C.D.Ill.1993). The court distinguished credit unions from banks.

Banks are for profit institutions which have the option of becoming members of the Federal Reserve.... National banks may form branches, are allowed to make loans or investments for all of the purposes permitted to financial institutions, and can accept both demand and time deposits.

*Id.* at 550 (citation omitted). Credit unions, on the other hand, said the court, "may only make loans to their members" and in Illinois, they must be nonprofit. In addition, the court continued, "[t]here must be a common bond (occupational or associational), adequate economic prospects, persons willing to act as directors, and democratic control of the institution." *Id.* at 551, *citing La Caisse Populaire Ste–Marie v. U.S.,* 425 F.Supp. 512, 517 (D.N.H.1976). The court concluded:

Clearly, credit unions are different from banks and not in direct competition with each other as suggested by the *Sinclair–Ganos* court since banks do not have the same geographical limitations and restrictions concerning to whom loans can be made as credit unions. Accordingly, this Court does not agree that the similarities between these institutions warrant an interpretation of § 523(a)(8) which is against the plain language of the statute.

*Roberts,* 149 B.R. at 551.

The next judge to address the question was Judge Hillman, but for the moment, the court will defer discussion of his decision.

Following Judge Hillman's decision came the latest ruling on the issue, handed down by the Bankruptcy Court in the Eastern District of Virginia. *In re Simmons,* 175 B.R. 624, 626 (Bankr.E.D.Va.1994). The court sided with Judge Hillman and the *Sinclair–Ganos* court, and against the *Roberts* court. In rejecting the *Roberts* court's conclusion that geographical limitations make a difference, the court stated: "Do geographical limitations prevent the eagle from flying? Nonsense." *Id.* at 626. The court continued: "Banks and credit unions are competitors in the lending business and should not be treated differently in a dischargeability proceeding. In addition, credit unions , like banks, generally exist to generate profits." *Id.*

The court now turns to Judge Hillman's decision in this case. *In re Delbonis,* 169 B.R. 1 (Bankr.D.Mass.1994). After reviewing the *Sinclair–Ganos* and *Roberts* decisions, Judge Hillman stated: "In any event, I do not believe that the extent to which a federal credit union resembles a bank should be determinative of the issue before the court." He noted that the Federal Credit Union Act defines a federal credit union as "a cooperative association organized ... for the purpose of promoting thrift among its members and creating a source of credit for provident and productive purposes." *Delbonis,* 169 B.R. at 3, *quoting* 12 U.S.C. § 1752(1). He observed that a federal credit union is "authorized to pay dividends on its shares." *Delbonis,* 169 B.R. at 3, *citing* 12 U.S.C. § 1763. Stated the judge, "[t]hese functions could be accomplished by a profit making organization." Judge Hillman also took into account that a federal credit union is exempt from non-property taxation, pursuant to 12 U.S.C. § 1768. In his view, however,

The fact that TI is exempted from non-property taxation on the basis of its creation under the Federal Credit Union Act, or its freedom from taxation under the Internal Revenue Code does not of itself qualify it as a nonprofit institution.

There is no necessary correlation between tax exempt status and nonprofit status. As just one example, a religious organization which expends a substantial part of its activities in intervening in political cam-

paigns is still not organized for profit even though it is barred from tax exempt status by 26 U.S.C. § 501(c)(3).

I have been unable to find a definition of 'nonprofit organization' in the abstract. It generally appears in a statute where it is defined. The Bankruptcy Code is certainly in the minority in not providing guidance in this regard.

Thus frustrated, and lamenting the want of a useful definition in the Bankruptcy Code, Judge Hillman turned to a 1922 Delaware Chancery Court decision. That decision included the following discussion of "when ... a corporation [may] be said to be organized for profit." *Id., quoting Read v. Tidewater Coal Exchange, Inc.,* 13 Del.Ch. 195, 116 A. 898 (1922).

> Whether dividends are expected to be paid may, generally speaking, be taken as the test by which we are to determine whether, or not, a given corporation is organized for profit. Perhaps a better way to put it would be to say that a corporation is for profit when its purpose is, whether dividends are intended to be declared or not, to make a profit on the business it does.... Nor would a mere declaration in its certificate of incorporation that it was organized not for profit, be sufficient to stamp upon it a nonprofit character. In each case, the true facts must be ascertained and the corporation judged accordingly, no matter what its scheme of operation or its pretensions may be.

*Delbonis,* 169 B.R. at 3–4, *quoting Read,* 13 Del.Ch. at 209–10, 116 A. 898. Judge Hillman agreed with the decision in *Read.* He said: "In my opinion non-profit organizations do not normally have shareholders nor do they pay dividends to those involved in them. Since TI does both, I find that it is not a nonprofit organization within the meaning of § 523(a)(8)." *Delbonis,* 169 B.R. at 4.

■ The court agrees with Judge Hillman's observation that the extent to which a credit union resembles a bank does not resolve the question of the nonprofit status of a credit union for the purposes of § 523(a)(8). The court, however, cannot agree with his ultimate conclusion that the credit union here does not qualify as a nonprofit institution under that section.[4] It is unnecessary, in the court's view, to search for a fitting general definition of the term "nonprofit institution," because whatever definition is appropriate in general, the First Circuit has specifically declared that credit unions are by nature—that is to say, by definition—nonprofit institutions. In *La Caisse Populaire Ste. Marie v. U.S.,* 563 F.2d 505 (1st Cir.1977), the First Circuit gave the following definition of a credit union[5]:

> A credit union is a democratically controlled, cooperative, *nonprofit* society organized for the purpose of encouraging thrift and self-reliance among its members by creating a source of credit at a fair and reasonable rate of interest in order to improve the economic and social conditions of its members.... A credit union is fundamentally distinguishable from other financial institutions in that the customers may exercise effective control.

*Id.* at 509 (emphasis added) (footnote omitted). Several authorities have adopted the First Circuit's characterization of credit unions as nonprofit entities. *See Branch Bank*

---

4. The recent legislative history shows that § 523(a)(8) was amended in 1984. Prior to 1984, the section exempted from discharge educational loans "made under any program funded in whole or in part by a governmental unit or a *nonprofit institution of higher education.*" (Emphasis added.) Now, the provision exempts loans "made under any program funded in whole or part by a governmental unit or a *nonprofit institution.*" (Emphasis added.) Congress thus expanded the definition of organizations whose funding can make a loan exempt from discharge. This change does not *in se* reveal, however, whether credit unions were meant to be included as nonprofit institutions.

5. In *La Caisse* the court articulated its definition of "credit union" in connection with its determination of whether the credit union in that case was exempt from taxation under § 501(c)(14)(a) of the Internal Revenue Code. The statute in question there gave no definition of the term "credit union"—a situation not unlike the one that exists here as to the definition, under 11 U.S.C. § 523(a)(8), of the term "nonprofit institution." Of particular significance to the question presented here is the fact that the credit union in *La Caisse,* like the one here, distributed its net earnings to its shareholders/members. *La Caisse* at 507.

& *Trust Company v. National Credit Union Administration Board*, 786 F.2d 621, 626 (4th Cir.1986), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987) (quoting *La Caisse*); *Allstate Ins. Co. v. Russo*, 829 F.Supp. 24, 30 (D.R.I.1993) (quoting *La Caisse*); 12 *Corpus Juris Secundum*, § 4 (citing *La Caisse*). Other courts have similarly regarded credit unions as nonprofit institutions. *See Credit Union National Association, Inc. v. Board of Governors of the Federal Reserve System*, 700 F.Supp. 1152, 1154 (D.D.C.1988) ("Credit unions, unlike banks, are cooperative and nonprofit depository institutions ..."); *U.S. v. Michigan*, 635 F.Supp. 944, 947 (W.D.Mich.1985), *aff'd.*, 851 F.2d 803 (6th Cir.1988) ("Federal credit unions are nonprofit cooperative associations of individuals organized under the FCUA ..."); *U.S. v. Maine*, 524 F.Supp. 1056, 1058 (D.Me. 1981) ("Federal credit unions are nonprofit cooperative associations of individuals organized under the FCUA ..."); *Heiskala v. Johnson Space Center Federal Credit Union*, 474 F.Supp. 448, 453 (S.D.Tex.1979) (Federal credit unions are "democratically controlled nonprofit cooperatives"). The *Banking Law Manual* states that "[c]redit unions are nonprofit mutual entities owned by qualified members." Norton, J. and Whitley, S., *Banking Law Manual*, § 5.02[1]. 13 Am. Jur.2d, Building and Loan Associations § 4 (1964) states that "[a] credit union is not an ordinary private corporation for profit, but is organized under special statutory provisions to promote thrift among, and provide credit for, its members." The court is persuaded by this wealth of authority that credit unions, by definition, are nonprofit institutions. It follows then that TIFCU, a federal credit union, is a nonprofit institution.

 Even if the court were to agree with Judge Hillman's reliance on the *Read* case, the court would nevertheless conclude that *Read* does not dictate the result Judge Hillman reached. *Read*'s key definition was that "a corporation is for profit when its purpose is, whether dividends are intended to be declared or not, to make a profit on the business it does." *Read*, 13 Del.Ch. at 209, 116 A. 898. The fact that the credit union in this case declares dividends is not dispositive

under *Read*. Rather, one must look to the purpose of the entity. It is worth noting again that the Federal Credit Union Act states that a federal credit union is "a cooperative association organized ... for the purpose of promoting thrift among its members and creating a source of credit for provident and productive purposes." 12 U.S.C. § 1752(1). The Sixth Circuit has explained:

> During the depths of the Depression, two of the many problems plaguing the national economy were scarce credit and high interest rates. In order to deal with these problems, Congress authorized the establishment of federal credit unions. S.Rep. No. 555, 73d. Cong., 2d Sess. (1934). These cooperative associations were designed to encourage and enable average citizens to pool their resources. Through federal credit unions, therefore, the federal government makes credit available on liberal terms and at low rates of interest to middle-class Americans who, because they frequently lack adequate security, might otherwise have to turn to small loan financiers who can extort excessive interest rates in times of unexpected need.

*U.S. v. Michigan*, 851 F.2d 803, 806 (6th Cir.1988). In *U.S. v. Maine*, 524 F.Supp. 1056, 1058–59 (D.Me.1981), the court stated that Congress authorized the establishment of federal credit unions "primarily to deal with the problems of scarce credit and high interest rates.... Through the federal credit unions the federal government makes possible low cost loans to members of those credit unions." Thus, the purpose of federal credit unions is not necessarily to make a profit for its members, but rather to promote thrift among such members and to provide them with a source of credit at low rates of interest. The issuance of dividends by the credit union in this case may be an important occurrence in its business life, but it is, in the end, an activity that is incidental to the credit union's principal purpose, and it neither undermines that purpose nor derogates from the credit union's nonprofit status.

The court rules that the subject loans are nondischargeable debts pursuant to 11

**6**

U.S.C. § 523(a)(8).[6] The order of the Bankruptcy Court is therefore *reversed.* The case is remanded to the Bankruptcy Court for proceedings consistent with this memorandum and order.

So ordered.

---

**6.** Because it is unnecessary to do so, the court declines to reach the question whether Judge Hillman should have allowed the appellant's mo-tion to amend its agreed statement of facts re-garding the applicant's status as a federal instru-mentality.